G. W. EASTERLIN *et. al.*, plaintiffs in error, *vs.* M. E. RY-
LANDER *et. al.*, administrators, defendants in error.

1. A contract to return in the autumn an amount of corn more in excess
of that borrowed the preceding winter than seven per cent. thereon,
is not usurious.

2. Where the vendee and vendor agreed, on the representation of a
third party, as to the quantity of corn in two cribs, to estimate it at
that quantity, the vendor having proposed to measure and the vendee
declining to do so, and where the vendee gave his note therefor in
December, and the same having been lost, gave another note for the
same quantity of corn in the following June, after much of it had
been fed away, and never complained of a deficiency in quantity until
all the corn was gone:

*Held*, that the vendee should pay for the corn at the estimated quantity,
and that a verdict to that effect was properly sustained by the pre-
siding judge.

Usury.   Contracts.   Vendor and purchaser.   Sales.   Be-
fore CHAS. F. CRISP, Esq., Judge *pro hac vice*.   Sumter Su-
perior Court.   April Term, 1877.

Reported in the opinion.

HAWKINS & HAWKINS, for plaintiffs in error.

B. P. HOLLIS; DUPONT GUERRY, for defendants

JACKSON, Judge.

This was a suit brought on a note for nine hundred and
twenty-six bushels of corn.   Under the charge of the court,
the jury found for the plaintiffs, when the defendants made
a motion for a new trial, which was overruled, and they ex-
cepted.

1. Two questions are made for our adjudication.   One
hundred bushels of corn, in addition to the quantity furnished
in December, was to be paid back by the vendee or bor-
rower, being more than seven per cent. upon the quantity
loaned; and one question is, was this usury?

We think not.   Corn fluctuates in value; at one time of the year it commands one price, at another time another. It is an article that is liable to shrink, and, when freshly gathered, is greater in bulk and heavier than after it stands awhile.   It may be very scarce, and command a high price in winter and spring, and in the ensuing fall, after a large crop, it may be very cheap.   It is not like gold—currency —the circulating medium of the country—passing from hand to hand at approximately uniform value.   Therefore we think that laws against usury do not apply to such articles as corn.   And the old Code, section 2023, defines usury to be " the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest."   This is not in the Code of Irwin, Lester and Hill, because, when it was compiled, the usury laws were not of force.   It is true that in Cobb's Digest, page 393, usury is differently defined to be the reserving or taking more than seven per cent. for the principal, on money, goods, wares or merchandise, or other commodities whatsoever.   But the Codes of 1861 and 1868 altered this statute by expressly confining usury to the loan of money.   And even if the statute of 1845, above referred to in Cobb, were now in force, upon a statute very similar, the supreme court of Florida held that corn, so fluctuating in value, was not embraced.   12 Flor., 552.

Such is the reason and spirit of the law, and the practice of our people accords with this view of it.   Nothing is more common than for one neighbor to borrow corn of another in spring, and agree to return more in quantity in the autumn; and nobody ever dreams of violating any law against usury if more is returned than an increase at the rate of seven per cent. per annum.

2.  The other point made is this : Rylander and his co-executors let Easterlin *et al.* have two cribs of corn, in December, 1871, and took their note for the return of nine hundred and twenty-six bushels in November following—that being the

quantity which the two cribs were estimated to hold by a third person, who had put the corn therein. Rylander proposed to measure again, but Easterlin declined, and the corn was taken by agreement at the estimate of the third person. Easterlin used it on the farm, feeding it away until June, when the note was lost; and, at the request of Rylander, another, dated back, and for the identical quantity of corn, was given in its stead. Afterwards, when all the corn was fed away out of both cribs, and when pay-day arrived, Easterlin complained that the quantity of corn he got in the cribs was some one or two hundred bushels short. The jury found against him, and the court refused to disturb the verdict. We think that the court did right. Easterlin should have had the corn measured. Nobody cheated him. He cheated himself, if he did not get the quantity he gave his note for. The principle ruled in 20 *Ga.*, 242, and again in 55 *Ga.*, 484, controls this case. Besides, after he had used up a large portion of the corn—more than half—he renewed his promise to pay the same quantity by renewing the lost note for the same amount; and never complained at all until all the corn was fed away, and when it was very difficult to ascertain the true quantity. The only proof of any consequence which he had was to the effect that he filled up the larger crib, and, measuring by wagon loads poured into it, it measured up only so much, less than he said Rylander estimated, or, rather, than the third person estimated that larger crib to have contained; but the smaller crib was not measured even after this fashion.

The charge of the court was fair, and the verdict, we think, right. Possibly there may have been slight errors in the charge; but the verdict could not have been properly other than it was, if any correction were made therein; and therefore the motion for a new trial was properly overruled.

Judgment affirmed.