## AMES *v.* QUIMBY.

A contract for furnishing goods at a certain price, based on the then value of gold, stipulated that such price should be increased or reduced with the rise or the fall in that value, with a proviso, however, that a rise or a fall of twenty-five per cent, unless it remained sufficiently long to affect the general price of merchandise, should not change the contract price of the goods. When they were delivered, gold had undergone a reduction of more than twenty-five per cent below its value at the date of the contract. *Held,* that in a suit on the contract the purchaser was entitled to a corresponding reduction in the contract price of the goods, without showing that the decline in gold had affected the general price of merchandise.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

Quimby brought an action against Ames & Sons, upon the following contract, viz. : —

" N. EASTON, Jan. 2, 1865.

" Mr. Ichabod L. Quimby agrees to furnish us, and we to take from him, fifteen thousand dozen long shovel-handles, to be of the best quality of timber and workmanship, for the present year, the price to be ($1.25) one dollar and twenty-five cents per dozen, basing the price on the present price of gold, $2.25.

" If the price of gold goes up or down, then the price of handles shall be advanced or reduced accordingly. But it is understood that no advance or reduction of the price of gold of twenty-five per cent shall change the price of handles, unless it shall remain at the advanced or reduced rate sufficiently long to affect the general price of merchandise.

" I. L. QUIMBY.<br>" OLIVER AMES & SONS."

Quimby, in the months of May and July, 1865, furnished the full complement of shovel-handles, and four hundred and forty-eight dozen in excess of the requirements of the contract. There were delivered nine thousand eight hundred and twelve dozen, May 20, 22, and 23, when gold was worth $1.31; one thousand one hundred and eighty-eight dozen, May 25, when gold was worth $1.36; and four thousand four hundred and forty-eight dozen, July 29, when gold was worth $1.45.

The price of gold having been reduced more than twenty-five per cent below $2.25, Ames & Sons claimed a corresponding reduction in their price of the handles; which would bring those delivered from May 20 to 23, inclusive, down to seventy-two and a half cents; those delivered May 25, down to seventy-five and a half cents; and those delivered July 29, down to eighty and a half cents, per dozen: but the court held that, to entitle them to any reduction, there must be proof that the decline in gold had at those dates affected the general price of merchandise; and, there being no such proof, judgment was given accordingly. Ames & Sons thereupon sued out this writ of error.

*Mr. J. Smiley* for the plaintiffs in error.

*Mr. L. D. Norris, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

The contract of the parties is, in several particulars, susceptible of different constructions. Thus, the price of the articles to be delivered is fixed at $1.25 per dozen, to be regulated, however, by the price of gold. "If the price of gold goes up or down, the price of the handles shall be advanced or reduced accordingly." If gold goes up in price, does the price of the goods go up, or do they go down? Gold is here made the standard of value, although it was not, at the time this contract was made, the ordinary medium of circulation in this country.

Instead of saying that gold, the standard, goes up or down, it would be more accurate to say that the depreciation of the paper in circulation is greater or less.

The court below held that if gold should go up in price, the price of the goods should be increased; if it should go down in

price, that of the goods should be diminished. In this we agree; and, as the important question does not here arise, we dismiss this branch of the case.

The contract has this further provision: " No advance or reduction of the price of gold of twenty-five per cent shall change the price of handles, unless it shall remain at the advanced or reduced rate sufficiently long to affect the general price of merchandise."

The price of gold having fallen, between the date of the contract and the delivery of the goods, more than twenty-five per cent, did that fact of itself entitle the defendants to a corresponding reduction in the price of the goods; or were the defendants also bound to show that the general price of merchandise had been thereby affected? In other words, was the qualification that the changed rate should continue so long as to affect the price of general merchandise applicable where the advance or reduction in the price of gold had been twenty-five per cent only, or where it was twenty-five per cent or more?

The court below held that it was applicable to the present case, where the change in the price of gold had greatly exceeded twenty-five per cent.

In considering this contract, we are to place ourselves, as far as may be, in the position of the parties, with the knowledge possessed by them of former and present affairs. They were practical business men. They had seen, during the previous four years, an enormous advance — extravagant and fictitious — in the price of every thing, and understood it to be dependent upon the character of the currency.

They intended to provide for the effect of an appreciation or depreciation of the currency in circulation, called the price of gold; and we think their evident knowledge of the principles governing the subject bears strongly upon the precise point decided by the court below.

While it cannot be denied that the language of the contract will bear the construction put upon it by the court below, we are all of the opinion that such construction is not in accordance with the intention of the parties.

It will better bear another interpretation, which is this: Gold

being at the price of $2.25, and having reference to that fact as giving their value, the one party agrees to deliver, and the other to receive, the goods at $1.25 per dozen. This price named should not, however, be fixed and absolute. If the price of gold shall change, the price of the goods shall also change. But they do not propose to embarrass themselves about trifles, and the gold regulation shall be modified by the extent of the change in its price. If it varies more than twenty-five per cent, we agree that that shall be deemed an important change, and shall of itself work a change in the price of the goods.

If the variation does not exceed twenty-five per cent, it will not necessarily be important, and we agree that it shall not affect the price of the goods, unless it continues so long as to affect the general price of merchandise. If it does so continue, and does so affect general prices, then that variation shall also regulate this contract.

The parties saw and knew that great changes in the value of gold had taken place in former times, and in their times, by which the purchasing power of the currency in circulation was greatly affected. They knew also that a slight change produced but little effect. To make them say, then, that a change of one hundred or one thousand per cent should not of itself change the price of the goods to be delivered, but that a change of twenty-five per cent only should have that effect, is contrary to all reason. On the other hand, to allow them to say that the large change in gold should of itself change the price of the goods, but that a change of twenty-five per cent, or under, should not affect the price of the goods, unless it was so long continued as to affect the general price of merchandise, is in harmony with the whole transaction.

It is not necessary to pursue the illustrations which have been or may be given of the effect of the different readings of the contract. We are satisfied that there was error in its construction by the Circuit Court, and that the case must be remanded for a new trial; and it is

*So ordered.*