JOSEPH CONNELL, Respondent, v. HUDSON & MONTAGUE, Appellants.

Kansas City Court of Appeals, April 3, 1893.

Contracts: MONEY PAID BY MISTAKE: WAGER. Plaintiff sold defendants a lot of cattle and delivered all but one which by mistake was missed. Defendants shipped to market and sustained a loss. Before the loss was known, plaintiff agreed to pay for the missed steer the amount of the loss sustained by the defendants. By mistake in estimating the loss, plaintiff paid a sum larger than the loss. *Held,* he can recover the excess, and the agreement was not a wagering contract.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Davis & Wingfield,* for appellants.

(1) Instruction number 1 states the law correctly and should have been given. In order to recover on the ground of a mistake of fact, the mistake must be mutual, and the money sought to be recovered back must have been paid in ignorance of some fact, a knowledge of which would have prevented the payment. The contract as set out in plaintiff's statement required plaintiff to pay all losses sustained by defendants in the purchase and sale of said lot of cattle without reference to the ownership or value of the steer which was not shipped and no mention is made in the statement filed with the justice of the omission to deduct the value of that steer. *Matthews v. Kansas City,* 80 Mo. 231; *Koontz v. Bank,* 51 Mo. 275. (2) Instruction number

4 covers the whole case. The evidence on both sides shows that the alleged contract was a mere idle wager and not binding on either party. The contract as stated by plaintiff when he brought this suit will bear that construction without doing violence to any rule of law or equity. We submit that the transaction amounted to nothing more nor less than a bet or wager on the weight of the cattle. *Kitchen v. Greenabaum*, 61 Mo. 110; *Monroe v. Smelley*, 78 Am. Dec. 541 (25 Tex. 586).

*A. J. Haynes* and *R. M. Reynolds*, for respondent.

(1) Money paid under a mistake of fact can be recovered. *Lyle v. Shinnabarger*, 17 Mo. App. 67; *Koontz v. Bank*, 51 Mo. 275; 1 Parsons on Contracts [7 Ed.] side page 466; Bishop on Contracts [Enlarged Ed.] sec. 632. (2) Appellants' second instruction was properly refused. The facts as detailed by the evidence did not warrant the lower court in declaring the contract between the parties to this suit a wager. 2 Bouvier's Law Dictionary [14 Ed.] subject "Wager;" *Kitchen v. Greenabaum*, 61 Mo. 110; *Crawford v. Spencer*, 92 Mo. 500; *Cockrell v. Thompson*, 85 Mo. 510. This contract was not a wager, nor contrary to public policy, good morals or good conscience. 2 Bouvier's Law Dictionary [12 Ed.] subject "Wager;" Bishop on Contracts [Enlarged Ed.] secs. 530, 532; Anderson's Dictionary of Law, subject "Wager."

SMITH, P. J.—This was a suit originating before a justice of the peace. The plaintiff's statement alleged that he sold defendants eighty-one head of fat steers for $6,420.75, and that defendants afterwards shipped eighty head of said steers to Chicago and received therefor $6,225.75; that defendants left on plaintiff's

farm one of said steers which was an average one; that defendant Montague during the time said defendant Hudson was in Chicago, Illinois, with said cattle, so shipped, and during the existence of the said partnership, contracted with plaintiff, to give plaintiff the steer left on plaintiff's farm in consideration of plaintiff paying defendants the losses sustained by them in the purchase of said steers; that plaintiff in carrying out said contract, through a mistake as to the amount of loss sustained by defendants in the said purchase of said cattle, paid to defendants, as said loss, the sum of $195, when in fact said loss so sustained was only $117.20, being the sum of $77.80 in excess of said loss, etc.

The evidence tended to show about this state of facts: The plaintiff sold the defendants eighty-one head of beef steers for $6,420.75. One of them was overlooked in the delivery and so left in plaintiff's pasture. The eighty head that was received were shipped to the Chicago market. Before they were shipped the defendant paid the purchase price. The plaintiff after discovering the undelivered steer in his pasture asked defendant Montague what he would take for him, and the latter replied he would take the average price of the other cattle. This steer averaged with the others in value.

It seems that both plaintiff and the defendant Montague expressed the opinion that there would be a loss sustained by defendants on the cattle. The plaintiff being of the opinion that it would be less than the defendant Montague thought it would be. After so expressing themselves a dispatch was received by defendant Montague from the other defendant Hudson to the effect that the steers had "sold for $5.65 per hundred-weight, and one short." It was proposed that if the plaintiff would pay defendants the amount

of the loss on the steers that he could have the one in his pasture, which was agreed to. The defendant Montague later on represented to plaintiff that they had made the calculation and that the loss on the steers was $205. Montague accepted from plaintiff in satisfaction of this a check for $195. Afterwards the plaintiff made a calculation of his own by which he found that the loss on the cattle was only $117.20, and that he had therefore overpaid the defendants $77.80, to recover which he brought this suit, and obtained judgment, to reverse which defendants appeal.

At the time the plaintiff desired to repurchase the steer which defendants had left in his pasture, it was conceded all around that the defendants would sustain a loss on the cattle they had shipped to Chicago, but both parties were then ignorant of the exact amount of the loss. The contract entered into in respect to the steer still remaining in plaintiff's pasture was as we understand the evidence no more than this: That the plaintiff would give and the defendant would take for said steer a price and sum equal to the amount of the unascertained loss which the defendants had sustained on the steers that they *had shipped*. The loss which plaintiff was to pay was the difference between the buying and selling price of the steers shipped. This did not include the steer which defendants still owned in plaintiff's pasture. The steers shipped cost $6,420.75, less $79.26, the average cost of the one in the pasture, or $6,341.49. They brought in Chicago $6,225.74. Subtracting the latter of these sums from the former and there remains $115.74, which was the amount of the loss and the consideration for the sale and purchase of the steer. The contract was based upon a sufficient consideration and was no more a gaming contract than if A were to sell and deliver to B his crop of wheat for such price per bushel as that of

its grade when ascertained had brought or would bring in the Chicago market on some previous or subsequent date then named. The price which is an important element of a sale would not then be wanting. *McConnell v. Hughes*, 29 Wis. 537; *Cunningham v. Brown*, 44 Wis. 72; *Amos v. Quinby*, 96 U. S. 324; Tiedeman on Sales, sec. 45, and so in the present case. Nothing is perceived in the contract that is contrary to sound morals or public policy.

The mistake of the parties in the amount of the loss is obvious. It does not appear from the evidence that the defendant Hudson knew the exact terms of the contract entered into between his partner Montague and the plaintiff. He it seems, in making his calculation of the loss, proceeded upon the erroneous notion that the amount received for the steers shipped should be deducted from the amount paid for the entire number purchased, and that the difference would be the loss which plaintiff was to pay as the price of the unsold steer. Such was not the contract as disclosed by the evidence. The defendant Hudson was mistaken in his assumption of the terms of the contract. The result of this mistake was that he reported to his partner Montague that the amount of the loss was $205. The plaintiff supposing this to be the correct amount paid it. Both plaintiff and defendant Montague believed Hudson had reported the correct amount. Neither of them prior to the payment by plaintiff had calculated the amount of the loss. Plaintiff later on discovered the mistake which defendant Hudson had made and sought to have it rectified but in which he failed.

It follows from these observations that the instructions requested by defendants, which asserted views of the law contrary to those which we have already expressed as applicable to the case were properly refused.

The court found from the evidence that the plaintiff was entitled to recover, which we think it was warranted in doing. The statement of the cause of action is amply sufficient to sustain the judgment, which must be affirmed. All concur.