THE BANK OF HORTON v. C. M. BROOKS AND CALE
BROOKS, *Partners as C. M. Brooks & Bro.*, AND
JOSEPH BARBER.

No. 11,984.* (67 Pac. 860.)

SYLLABUS BY THE COURT.

SURETIES—*Promissory Note—Extension of Time of Payment
—Release of Surety.* Where a holder of a note on which there
is a surety agrees with the maker thereof to extend the time of
payment, if he, the maker, will enter into a contract with a
stranger, the said holder to be the beneficiary of such contract,
the fact that by such contract such maker is liable to be made to
respond in damages for its breach to the third person—even
though the performance of such agreement cannot be specifically
enforced—constitutes a sufficient consideration moving from the
maker of such note to the holder to support the agreement to ex-
tend, and thereby excuse the surety from payment.

Error from court of appeals, northern department;
JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. MC-
ELROY, judges. Opinion filed February 8, 1902. Af-
firmed.

*M. A. Low, W. F. Evans,* and *James A. Clark,* for
plaintiff in error.

*W. F. Guthrie,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : The Bank of Horton held the
note of the Brooks brothers for $614.11, on which the
defendant Barber was an indorser. After it became
due and before the days of grace had expired, and
without the knowledge or consent of Barber, the cash-
ier of the bank, Hovey, went with one Leverton to
the home of Brooks, where Leverton proposed to pur-
chase 4000 bushels of corn from him. Brooks in-

*For opinion by court of appeals, see 10 Kan. App. 576, 62 Pac.
675.—REP.

formed them that he would sell the corn, but that the proceeds of such sale would have to go to pay the Barber note, and Hovey told him that if he would sell the corn to Leverton the bank would extend the note for thirty days, within which time the corn was to be delivered and the proceeds paid upon the note. Thereupon Brooks agreed to sell the corn to Leverton, and, as expressing the contract, a written agreement was drawn up, which is as follows:

### "BILL OF SALE.

"Know all men by these presents, that I have this day sold, and by these presents do hereby sell, assign, transfer and set over unto Geo. W. Leverton, his administrators or assigns, 4000 bushels of No. 2 yellow corn, now located on ——— quarter section No. ———, township No. ——— of range No. ———, Brown county, Kansas, to be delivered at Germantown, Kan., in crib or on cars, at the option of said Geo. W. Leverton, the purchase-price to be determined by deducting five cents per bushel from the closing quotation on the Kansas City Stock Exchange for a like grade of corn, upon any day between the date of delivery and the 1st day of January, 1897.

"I further agree to file with Geo. W. Leverton, at his office in Horton, Kan., a written acceptance of the day which I may choose to name the price as above stipulated, not later than ten o'clock of the day so selected. I further certify that I have full power to sell and convey the corn herein mentioned; that there are no encumbrances of whatsoever nature or kind against it.

"Payment of ten dollars has been made hereon, receipt whereof is hereby acknowledged.

"In witness whereof, the said grantor has hereunto set his hand and seal, this 8th day of December, A. D. 1896.                      C. M. BROOKS & BRO."

But a small portion of the corn was ever delivered by Brooks to Leverton, the balance being disposed of

by them to other parties for other purposes.   The note not being paid by the principals, the Bank of Horton brought this action against them and Barber, the surety, to collect.   Barber had judgment for his costs and the bank took the case on error to the court of appeals, where the judgment of the district court was affirmed.   (*Bank v. Brooks*, 10 Kan. App. 576, 62 Pac. 675.)   It was then certified to this court.

Barber set up in his answer the extension granted to Brooks, and also pleaded matter by way of estoppel.   The errors here complained of by the bank relate to the defense urged by him arising out of the extension of time by it to Brooks, and cluster about the proposition that no valid and binding extension of the time of the payment of the note was given to Brooks.   The fundamental principle that if a creditor shall give to a principal debtor a valid extension of the time of payment of the debt, the surety is thereby released, is fully admitted, but it is urged that, inasmuch as this agreement to extend the time of payment of the note on the part of the bank was based upon the contract between Brooks and Leverton, which contract was not enforceable because the price of the corn was not fixed (and thereby the minds of the parties might never meet relative to the same), there was no binding contract between Brooks and Leverton, hence no valid extension of the time of payment of the note to Brooks, and hence Barber was not released as surety thereon.   It is further contended that this contract of extension was a conditional one, and dependent upon the delivery of the corn to Leverton ; and inasmuch as the corn was never delivered to him, the extension contract was not binding upon the bank, hence did not serve to discharge Barber.   We are not at all sure that, as between Brooks and

Leverton, this contract was not a valid one, and that the price of the corn was not certain, for that is certain which can be made certain ; or that, in case Brooks made default in electing to name the day on which Kansas City prices should determine the price he was to receive, Leverton himself might not have made such election, selecting the price most favorable to Brooks. On this question, see *Ames v. Quimby*, 96 U. S. 324, 24 L. Ed. 635; *McConnell. v. Hughes*, 29 Wis. 537; *Easterlin et al. v. Rylander et al., Adm'rs*, 59 Ga. 292. We do not, however, so decide this question.

By the contract Brooks undertook to do something ; by the acceptance of this contract Leverton announced his purpose to hold him to the doing of that something ; hence Brooks had some obligation placed upon him by reason of the execution of his contract and was bound to respond to Leverton in some way. Admitting for the sake of the argument that the contract could not be specifically enforced, for the reason that the price could not be determined, yet there can be little question but that Leverton could have recovered a judgment against Brooks upon the contract, for his failure to make such price certain by his election ; hence Brooks was placed in a worse position by reason of this contract than he would have been had it not been made, and we think this is sufficient consideration moving from Brooks to sustain the agreement made by Hovey for the bank to him to extend the time of the payment of the note. Hovey expected and hoped that by the sale of the corn to Leverton the bank would be enabled certainly to obtain payment of this note out of the proceeds of the sale of such corn. Instigated by the hope of this betterment, it gave the extension. Brooks, to obtain the extension, placed

himself under some obligation to Leverton. We think that this burden undertaken by Brooks was sufficient to sustain the agreement for the extension of the note and thus excuse Barber. That the corn was not finally delivered cuts no figure. The contract of Brooks to Leverton and the contract of extension by Hovey to Brooks each took effect presently and were dependent one upon the other. It would be a misuse of terms almost to say that the note was to be extended thirty days if at the end of thirty days the corn had been delivered, and that the extension would not be a valid one if at the end of the extended time the condition had not been performed. The agreement to extend was made at the time the agreement to sell was executed. It is certainly settled that it takes but slight consideration to support an agreement to extend so as thereby to excuse the surety. In this case we are well persuaded that there was a substantial consideration moving from Brooks and sufficient hope of betterment moving to the bank to sustain the agreement to extend the note and thus excuse Barber from its payment.

Some other questions are urged, but they are really related to the one we have discussed and we do not find in them sufficient reason to reverse the judgment.

The judgments of the court of appeals and of the district court will be affirmed.

JOHNSTON, GREENE, ELLIS, JJ., concurring.