# Union Naval Stores Co. *v.* Patterson.

## *Assumpsit.*

(Decided December 5, 1912.  Rehearing denied February 13, 1913.
60 South. 807.)

1. *Limitation of Actions; Open Account; Definite Contract.*—A contract which is definite in all its terms and which leaves nothing for future adjustment is not a mere open account within the three year limitation (section 4838, Code of 1907) whether in writing or not.

2. *Same.*—A contract such as is set out in this case is not an open account, and an action for the buyers failure to pay the price is not barred by the statute of three years, both parties knowing that Savannah has a Board of Trade, which duly and daily quotes the price of the articles named.

3. *Sales; Contract; Obligation of Buyer.*—The contract examined and it is held that the buyer, in the absence of a custom to the contrary, must pay the price quoted on the day that the market was reported as nominal for an installment delivered on that day and could not compel the seller to accept the price fixed on the basis of the next succeeding market quotation when the market was firm, steady or quiet.

APPEAL from Mobile Law & Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by W. B. Patterson against the Union Naval Stores Company.  From a judgment for plaintiff, defendant appeals.  Affirmed.

The following are counts 3 and 4:

(3) "Plaintiff claims of defendant $1,675.28 damages for the breach of an agreement in writing entered into by it on the 18th day of March, 1905, by which the defendant promised to pay to the plaintiff for all turpentine and rosin received by plaintiff and delivered to defendant during the season of 1905, consisting of the output of the turpentine orchards of Robbins' Turpentine Company, J. H. Brown Turpentine Company, J. W. Havard Turpentine Company, E. H. Walton Tur-

pentine Company, E. B. Simpson Turpentine Company, Walton Lord Turpentine Company, T. C. Hatter & Son, and Tom Ward, at the price of rosin and turpentine based on the Savannah market, date of delivery, basis of rosin to be 10 cents for 280 pounds off said Savannah quotation on each grade of rosin, and 3 cents per gallon off for turpentine in bulk. And plaintiff avers that he delivered to the defendant all the turpentine and rosin received from the turpentine orchards and persons above mentioned, which turpentine and rosin the defendant has failed to fully pay for on the terms specified in said contract, which sum of money, etc., with the interest thereon from May 28, 1906, is still unpaid." This count was amended by adding the following: "Plaintiff avers that he also furnished to defendant turpentine and rosin from the orchard of N. A. Skogland, under an agreement with the defendant that the turpentine and rosin he delivered from this orchard would be received and paid for under the same terms and conditions set out in contract of March 18, 1905, for the sale of turpentine and rosin received from other orchards, and the turpentine and rosin from this orchard forms part of the claim sued on."

(4) Same as 3 as to terms, date, names of parties, and amount, except that it is alleged that plaintiff agreed to deliver to the defendant all the rosin and turpentine received by him during the season of 1905, or from April 1, 1905, through March 31, 1906, consisting of the outputs of the turpentine orchards and persons named in count 3, and that defendant agreed to pay plaintiff for the same at the price and under the conditions set out in count 3. It is averred that plaintiff complied with his part of the contract by delivering to the defendant the output of the orchards, and that defendant has failed to comply with his part, in that he

[Union Naval Stores Co. v. Patterson.]

has failed to pay all the money due thereunder. The same amendment is allowed to count 4 as is set out to count 3.

BROOKS & STOUTZ, for appellant. Pleas should be demurred to and not stricken.—*Carter v. Fields*, 130 Ala. 430; *Dalton v. Bunn*, 137 Ala. 175. But aside from the method of testing the sufficiency of a plea, the plea of the statute of limitations of three years was a complete answer to the complaint and the court was in error in holding it insufficient.—*Ala. M. L. Co. v. Jackson*, 121 Ala. 172; section 4838, Code of 1907; *Chambers v. Sead*, 87 Ala. 558; 25 Cyc. 1042; 18 N. E. 790; 49 Atl. 66; 87 Pac. 612; 12 N. W. 780; *Wooten v. Steele*, 98 Ala. 253; *Phillips v. Adams*, 70 Ala. 373; *Nelson v. Shelby Mfg. Co.*, 96 Ala. 528; *Jenkins v. Harrison*, 66 Ala. 345. The court gave an improper construction of the contract as to the basis of fixing the price at the time of delivery.—*Kountz v. Kirkpatrick*, 13 Am. Rep. 693; 122 U. S. 121; 49 N. W. 901; 99 Mass. 345; 56 N. E. 763; 62 Fed. 136.

INGE & ARMBRECHT, for appellee. This action was not subject to the statute of limitation of three years. —*Moore v. First Nat. Bank*, 139 Ala. 535; *Hairston v. Sumner*, 106 Ala. 382. The sale of the produce from the farm of Skogland does not change the form of the contract so as to shorten the period of limitations.—19 A. & E. Ency. of Law, 271; 35 S. W. 308; 25 Cyc. 1089. The court properly fixed the price according to the Savannah market as provided in the contract and no error intervened on that account.

DE GRAFFENRIED, J.—We confine ourselves in this opinion, in so far as the pleadings are concerned, to

the questions which are presented for our considera-
tion, growing out of the action of the trial court in
striking the defendant's pleas setting up the statute
of limitations of three years, as a defense to the causes
of action set out in the third and fourth counts of the
original complaint, and in the third and fourth counts
of the complaint as amended. This suit was brought
by W. B. Patterson against the Union Naval Stores
Company. The first count of the complaint was upon
an open account. The second count was upon an ac-
count stated. The third and fourth counts claimed
damages for the breach of a contract in writing. The
third and fourth counts were amended; and, in order
that the question now under discussion may be fully un-
derstood, the reporter will set out the third and fourth
counts, and also the amendment which was allowed by
the trial court to said third and fourth counts.

The plea of the statute of limitations sets up that the
demand sued on is an open account, and the same is
barred by the statute of limitations of three years.
The trial court, being of the opinion that the plaintiff's
action, as set out in the third and fourth counts as orig-
inally filed, was an action founded on a promise in writ-
ing not under seal (see subdivision 4 of section 4835 of
the Code of 1907), and that counts 3 and 4, as amended,
set up actions upon a simple contract or specialty (see
subdivision 10 of section 4835 of the Code of 1907), held
that the plea of the statute of limitations of three years
(see section 4838 of the Code of 1907) was inapplicable
as a defense to either of said counts, and therefore
struck said plea as a defense to said counts upon the
ground that the plea showed on its face that it present-
ed no defense to the plaintiff's right of recovery under
said counts.

A contract which is definite in all of its terms, when nothing, under the terms of the contract, is left for future adjustment, whether it be evidenced by a writing or not cannot be considered a mere open account. In the instant case, we find nothing in the contract for the alleged breach of which this suit was brought, which was left open for future adjustment, or which, within the true meaning of the law, was indefinite or uncertain.

The contention of the appellant is that the price to be paid for the turpentine and rosin was not, under the terms of the contract, definitely fixed. The contract declared upon says: "Defendant agreed to pay plaintiff for same at the price of rosin and turpentine based on the Savannah market, date of delivery, basis of rosin to be 10 cents per 280 pounds off said Savannah quotation on each grade of rosin, and 3 cents per gallon off for turpentine in bulk."

We find nothing uncertain, within the meaning of the law, in the above quoted portion of the contract, as to the price which was to be paid for the rosin and turpentine. While neither party knew, when the contract was made, what the price would be, both parties did know that they would have nothing to do with fixing the price—they knew that there could not be any disagreement between them as to the price to be paid when the rosin and turpentine were delivered—for they had agreed that the Savannah market on the day of the delivery, as fixed by the quotation of the Savannah board of trade, should definitely fix the price to be paid. Savannah is a seaport; and the fact that it has daily "quotations" of the price of rosin and turpentine shows conclusively that the parties knew, when they made the contract, that it had a board of trade which daily quoted the price, at that point, of the articles named. The

contract sued on, therefore, was not an open account.—
*Maury's Adm'r v. Mason's Adm'r*, 8 Port. 211; *Gayle's
Adm'r v. Johnston*, 72 Ala. 254, 47 Am. Rep. 405. As
the plea of the statute of limitations of three years pre-
sented no defense to said third and fourth counts, either
in their original form or as amended, the plea was, as
to said counts, frivolous, and the trial court commit-
ted no error in granting plaintiff's motion to strike
them from the files.

2. The evidence shows that the Savannah board of
trade, during the period covered by this controversy,
made daily quotations of rosin and turpentine. These
quotations seem to have been made twice each day, once
at 11 o'clock a. m., and again at 4 o'clock p. m. Says
the superintendent and secretary of the board of trade:
"The sales made between 4 o'clock p. m. of the previ-
ous day and 11 o'clock a. m. were reported to me by the
sellers, and they were tabulated and placed on the
blackboard in board of trade's room. The quotations
committee would meet at 11 o'clock, and, from the sales
reported on the board, would make up their findings
and declare the quotation of the market for the 11
o'clock call. A like meeting was had by the committee
at 4 o'clock, and fixed prices or quotations based upon
the sales reported between 11 o'clock a. m. and 4 o'clock
p. m. of the day." The daily reports, covering the
period in controversy, of the Savannah board of trade
were introduced in evidence. On some of the daily re-
ports, the market is reported as "firm," on others as
"nominal" or "nothing doing," on others as "dull," and
on still others as "quiet" or "steady."

Says the above witness: "A 'nominal' or 'nothing
doing' market describes the state of the market; the
price quoted being merely a memorandum to show at
what price the last sales were recorded. It shows what

[Union Naval Stores Co. v. Patterson.]

the goods sold brought, but does not undertake to say that the entire offerings could be sold at that price. 'Dull' means very small trading; 'quiet' means some inquiry; 'steady' means there is some demand; and 'firm' means that there is demand for the entire holdings, or that the entire holdings have been taken."

We have quoted the above testimony of the superintendent and secretary of the Savannah board of trade for the purpose of fully explaining the matter in dispute between the parties to this suit, and the real cause of this litigation. The plaintiff contracted to sell and deliver the entire output of rosin and turpentine from certain turpentine orchards to the defendant during the year 1905, to be delivered to the defendant as it was received from said orchards by the plaintiff; each installment to be paid for by the defendant as it was delivered. The price to be paid was "the price of rosin and turpentine based on the Savannah market, date of delivery, basis of rosin to be 10 cents per 280 pounds off said Savannah quotation on each grade of rosin, and 3 cents per gallon off for turpentine in bulk." The plaintiff, pursuant to said contract, delivered to the defendant in installments, as he received it, along through the year 1905, the said rosin and turpentine. When the defendant received from the plaintiff a lot of rosin or turpentine, and the Savannah market, as shown by the report of the board of trade, was "firm" or "steady," or even "dull" or "quiet," for the day on which the defendant received such rosin or turpentine, then the defendant paid the plaintiff for the rosin or turpentine in accordance with the price fixed by the board of trade at 4 o'clock p. m. of that day. When, however, a delivery of rosin or turpentine was made by the plaintiff to the defendant on a day when the market at Savannah was, according to the report of the board of

trade, "nominal" or "nothing doing," then the defend-
ant refused to pay the plaintiff for such rosin or tur-
pentine in accordance with the price fixed by the board
of trade for such day, but, against the protest of the
plaintiff, required the plaintiff to accept another price,
which, as we understand the evidence, the defendant
fixed on the basis of the next succeeding market quota-
tion made by the board of trade when the market was
"firm," "steady" or "quiet," or such market as actual-
ly fixed the closing price of the day from sales actually
made on that day. The payments so made the plaintiff
were received by him under protest, and this suit was
brought to recover the difference between the amount
which the plaintiff would have received if settlements
had been made with him on the basis of the price as fix-
ed by the board of trade on such "nominal" or "nothing
doing" days—days on which, some of the evidence
tends to show, there were no actual sales in Savannah
—and the amount which the defendant actually paid
him.

We can find nothing in the evidence, except some evi-
dence as to custom, to which we hereafter briefly refer,
indicating that, when the parties made the contract,
they did not intend that the price to be paid the plain-
tiff on the delivery of the rosin and turpentine was to
be fixed in any way other than by the quoted price
fixed by the Savannah board of trade on a "nominal"
or "nothing doing" day, as well as on a day when that
board fixed the price from actual sales, or when the
market was reported as "firm," "steady," "dull," or
"quiet." It is not contended that the price or market
quotations were ever fixed by the board of trade other
than in good faith, or other than in accordance with
its previous custom. "If there is one thing which, more
than another, public policy requires, it is that men of

full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into fully and voluntarily, shall be held sacred, and shall be enforced by courts of justice."— *Sir George Jessel in Printing, etc., Co. v. Sampson,* L R., 19 Eq. 465.

While the above quotation is taken from a case in which the breach of a contract was sought to be justified upon the ground that the contract was void as being against public policy, we think the doctrine announced is broad enough to find applicability to some of the tendencies of the evidence in this case.

The defendant had no right to ingraft, in the absence of a well-recognized custom authorizing it, and which was to be read into the contract as a part of it, against the protest of the plaintiff, the stated exception upon the contract, and neither it nor the courts have the right to alter the express terms of a contract which the parties, with full capacity to contract, solemnly made. While the plaintiff waited for five years, after his cause of action arose, before bringing his suit, and while, during subsequent years, the same parties had dealings with each other under another and different contract which provided, in express terms, that "when the official closing Savannah market is quoted as "nominal,' 'fictitious,' 'nothing doing,' or that day is a 'holiday,' the first official closing market thereafter is to form the price basis," while there was a dispute among the witnesses as to whether it was or was not the custom, when sales for actual future delivery of rosin or turpentine were made, and by the terms of the contracts of sale the price was to be determined by the Savannah market as of the day of delivery, for such settlements to be made, not at the prices quoted on a "nominal" or "nothing doing" day, but at the prices quoted on the

[Union Naval Stores Co. v. Patterson.]

next succeeding "firm," "steady," "dull," or "quiet" day, in short, while there was evidence upon which a jury, under appropriate legal instructions from the trial judge, might have rested a verdict for the defendant, nevertheless, after carefully considering all the evidence in this case, we have arrived at the conclusion that there was sufficient evidence in the case to authorize the judgment which the trial judge rendered in favor of the plaintiff against the defendant.

We are not disposed to engage in a discussion of the evidence, for such discussion would be of no benefit to the parties, and could certainly be of no service to others. Neither are we disposed to indicate, in our opinion, as to what particular count in the complaint the judgment of the trial court should be referred. While it is argued here that there was no evidence that any rosin or turpentine was delivered to the defendant from the "Skogland" orchard, and that for that reason the judgment should not be referred to the third or fourth count, as amended, the complaint is broad enough, in our opinion, to cover the plaintiff's right of recovery, as that right is disclosed by the evidence.

After carefully considering all of the evidence in this case, we are prepared to say that, in our opinion, the appellant has failed to show that the court below committed reversible error on the trial of this cause; and the judgment of the court below should be affirmed.

Affirmed.    All the Justices concur.