## DICKSON v. KILGORE STATE BANK.*
### (No. 494–3894.)

(Commission of Appeals of Texas, Section A.
Jan. 30, 1924.)

**1. Judgment ⬤⟩199(3)—Court unauthorized to disregard findings of jury, if any pleadings or evidence to support.**

If there is any evidence or pleadings to sustain a finding of the jury, the court is unauthorized to disregard their findings and to render judgment non obstante veredicto.

**2. Appeal and error ⬤⟩930(1)—Evidence and pleadings considered most favorably to party obtaining verdict.**

In determining on appeal whether the evidence or pleadings support the finding of the jury, the court must consider them most favorably to the party obtaining the verdict in the lower court.

**3. Contracts ⬤⟩237(2)—Extension agreement not binding both parties for full period is without consideration.**

An agreement to extend the time of paying an overdue indebtedness to a time stated, but which permits the debtor to pay the obligation any time within the extension period and so stop interest, is invalid for want of consideration.

**4. Contracts ⬤⟩237(2)—Agreement to extend overdue indebtedness in consideration of part payment from secured loan held binding.**

Where a debtor and his wife, in consideration of an agreement on the part of the creditor to extend an overdue indebtedness, execute a mortgage or deed of trust on property of both to secure a loan by a third person, procured by the creditor, and pay part of the money borrowed on the debt, the agreement to extend is valid and binding on the creditor.

**5. Appeal and Error ⬤⟩1175(6)—Supreme Court cannot find facts in order to render judgment which trial court should have rendered.**

While the Supreme Court on appeal can render judgment on the findings of the jury that should have been rendered in the trial court where the jury has found the facts, and the findings have been sustained by the Court of Civil Appeals, it cannot for that purpose determine for itself facts not found by the lower courts.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Clark Dickson against the Kilgore State Bank. Judgment for defendant was affirmed by the Court of Civil Appeals (244 S. W. 392), and plaintiff brings error. Reversed and remanded.

Lacy & Bramlette, of Longview, for plaintiff in error.

Young, Stinchcomb & Strickland, of Longview, for defendant in error.

BLANKS, J. Clark Dickson, a customer of the Kilgore State Bank, was indebted to it on and just prior to October 18, 1920, in the sum of $4,405.35, evidenced by various notes upon which he was liable either as principal, comaker, or surety with some of his tenants. The indebtedness was secured by a chattel mortgage theretofore executed by Dickson on certain live stock and his cotton crop for the current year. The condition of his crop and the prospects of low prices for cotton were such that Dickson anticipated his inability to pay the debt out of the crop, and the bank was demanding payment. The substantial allegations of the plaintiff's petition were that on October 18, 1920, at which time $1,432 of his indebtedness to the bank was past due, F. D. Obertheir, the president and cashier of the bank, agreed with the plaintiff to the effect that if the plaintiff would mortgage to the bank, or to some one designated by it, a certain 119 acres of land, of which the testimony indicated 69 acres was the plaintiff's property and 50 acres the separate property of his wife, and thus procure $2,500, and out of such sum pay the bank the $1,432 then due, and would pay the bank interest on the remaining indebtedness until paid, the bank would extend the maturity of such balance to October 18, 1921, "unless the plaintiff elected to pay said notes prior to said 18th day of October, 1921, and accrued interest to the time of payment," and that, in reliance upon this agreement, the plaintiff and wife executed a deed of trust on such land to said cashier, as trustee, for the use of E. C. Obertheir, who appears to have been the father of the cashier, and who actually made the loan, and who the plaintiff alleged to be the party "designated" by the bank, and out of the sum so procured, paid the bank the $1,432 then due it, reserving the remainder to himself for other uses.

It appears that pending these negotiations, or shortly subsequent to them, Dickson deposited with the bank the warehouse receipts for his cotton aggregating some 30 bales, and while the mortgage held by the bank gave it general authority to sell the cotton, the plaintiff's allegation was that it was a part of this extension agreement, and the bank then so agreed, that it would hold the cotton and not sell it prior to October 18, 1921 (the maturity date of the remaining indebtedness as alleged to have been extended), unless the plaintiff elected for it to be sold sooner and the proceeds of sale applied to the extinguishment of the debt.

The allegation then follows that in September, 1921, when the cotton at such time had a market value of $3,000, the plaintiff applied to the bank for his cotton so it might then be sold for application on the debt, and the bank refused to comply with the demand, to his damage in that sum.

The answer of the bank, aside from its general denial, was an assertion of its right to sell the cotton under the terms of the mort-

gage, and that it had a right to sell it in accordance with general custom, and did in June, 1921, sell same and placed the proceeds of sale, which the evidence shows to have been some $1,171.08, to the credit of plaintiff on his indebtedness to the bank. By an additional special answer the bank claimed a subsequent agreement between the parties made in March, 1921, by the terms of which the bank was authorized to sell the cotton in June following; that being the time it was actually sold.

Answering the special issues submitted to it, the jury found that plaintiff and the bank entered into an agreement "that said bank would hold the 30 bales of cotton delivered by Clark Dickson to said bank for a period of one year from October 18, 1920, unless the plaintiff elected to sell said cotton at an earlier date," and that the bank agreed to extend the maturity of the indebtedness to October 18, 1921, and that Dickson agreed to pay interest thereon to October 18, 1921, fixed, and that the deed of trust on the land above referred to "was given to the defendant, or to some person designated by it for its use and benefit, as a part consideration for the agreement to extend the time of payment of said notes," and further found against the bank on the issue of an agreement by plaintiff that the bank might sell the cotton in June.

[1, 2] The trial judge, concluding that the findings of the jury were "not supported by either the pleadings of plaintiff or the evidence," rendered judgment for the defendant, and upon the same premise the Court of Civil Appeals affirmed the judgment. 244 S. W. 392. The general question thus presented for review here is whether there are any pleadings, or any evidence, to sustain these findings, for, if there were either, the trial court was unauthorized to disregard the jury findings and render judgment non obstante veredicto. In determining this question we are required to consider the pleadings and testimony from the angle most favorable to the plaintiff (Carsey v. Hawkins, 106 Tex. 247, 163 S. W. 586; Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; Manning v. Beaumont S. L. & W. Ry. Co., 107 Tex. 546, 181 S. W. 687), but, as the case is to be reversed and remanded, and the testimony of the plaintiff is vigorously disputed by the bank, it may be that upon another trial a different jury would resolve the issues of fact against the plaintiff, for which reason this opinion is in no sense indicative of this court's opinion, as to the issues of fact between the parties.

The plaintiff's case as pleaded rests upon the theory that there was a twofold consideration for the bank's agreement to extend the maturity of the indebtedness, viz: (1) The agreement of the plaintiff to pay interest on the debt as extended; (2) the detriment to the plaintiff arising from incumbering his land by the execution of the deed of trust,

and the resultant benefit to the bank by the reduction of his indebtedness to it, and so situating the bank that it retained its original collateral for a $3,000 debt instead of a $4,400 debt, thus increasing its security.

[3] The plaintiff's claim with reference to any agreement to pay interest was as before stated to pay such interest to the maturity date as extended, "unless the plaintiff elected to pay said notes prior to said 18th day of October, 1921, and accrued interest to the time of payment;" thus with much particularity of averment merely alleging an option on his part to pay the interest to that date or not. The bank denied any agreement to extend whatever, and the only person who testified to the existence of any such agreement was the plaintiff himself, who several times reiterated his right under whatever agreement was made to sell his cotton and pay before October 18, 1921, and that the interest would then stop. As therefore correctly held by both the trial court and Court of Civil Appeals, there was neither pleading nor evidence to sustain the jury's findings of an agreement to pay interest to a fixed date, and the finding was properly disregarded. As has been definitely held by the Supreme Court in Benson v. Phipp, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Austin Real Estate & Abst. Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430, a promise by a creditor to extend the time of payment of an interest-bearing note is supported by an agreement to pay interest to the maturity as extended only when the term for which the interest is to be paid is certain and definite, so that the debtor cannot tender payment or pay without the consent of the creditor before the time of extension terminates. 8 C. J. p. 439; Simkins, Contract and Sales, p. 73; Norris v. Graham (Tex. Civ. App.) 42 S. W. 575; Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605; Bank of Montgomery v. Schatz, 104 Minn. 425, 116 N. W. 917.

[4] The second question presents, however, a more serious proposition. Where a debtor, in consideration of an agreement on the part of the creditor to extend an indebtedness, executes, to or for the benefit of a creditor, a mortgage or deed of trust on property to secure a part or all of the debt, the agreement to extend is valid and binding on the creditor. Wylie v. Hightower, 74 Tex. 306, 11 S. W. 1118. It is so, because the creditor has been benefited by the augmented security for the debt, and because the debtor has incumbered his property and subjected himself to the burden upon his title which the mortgage necessarily implies. 8 C. J. 438. It being conceded that, if the plaintiff had contracted to borrow the $2,500 from the bank itself, and had executed the deed of trust on the land for the use and benefit of the bank, with the understanding that $1,432 be applied to retiring the then due notes of the plaintiff, a sufficient consideration would have ex-

isted for the extension, it is difficult to understand why a different rule would apply, if as a coincident part of the arrangement with the bank the loan is contracted with a third party with the understanding that $1,432 out of the proceeds of the loan be delivered the bank for the retirement of the debt. In either event, the bank is similarly benefited. It retains all the security it originally held for a $4,400 debt to secure a balance of only $3,000, and its prospect of collecting its entire claim is to that extent made more certain, and the plaintiff suffers in either event the same detriment. He has incumbered his own and his wife's land, and has in effect, as might be inferred from the facts of this case, subjected to the payment of $1,432 of his debt the lands of his wife, which would not otherwise have been available to the bank by either attachment or execution.

The case here is similar in principle to that of Bank v. Brooks, 10 Kan. App. 576, 62 Pac. 675. In that case the cashier of the bank agreed to extend the payment of a note to a later date if the principal debtor would sell his corn to a third party with the understanding that the proceeds of sale be applied to the extent necessary to the payment of the note, and the cashier of the bank was active in having the contract of sale of the corn executed between the debtor and the purchaser thereof. The contract of sale was only partially performed, and the bank received an insufficient amount from the proceeds of sale to satisfy the note and thereafter brought suit to recover the balance due against the principal debtor and an indorser on the note. The defense of the indorser was the extension of the note under the circumstances stated without his knowledge or consent, and, among other defenses immaterial here, the reply of the bank there, as it is argued here, was that the agreement of the bank to extend was without consideration and void, and therefore amounted to no extension. The determination of the question by that court necessarily involved as the primary and controlling proposition whether or not there was under the circumstances stated a sufficient consideration for the agreement to extend. In passing on this question the Court of Appeals said:

"The contemplation of the parties was that the avails of the corn sold would be applied to the payment of the note. The instruction conformed literally to the evidence offered in support of the second plea, and correctly expressed the law governing the facts, if the jury so found them to be. Again, under this assignment it is contended that the court assumes by this instruction, as a matter of law, that Hovey had authority, as cashier, agent of the bank, to extend or lend the credit of the bank in contracts wholly between third parties. This is a mistaken assumption on the part of counsel. The only authority assumed upon the part of Hovey was to grant the extension in view of an arrangement by which he expected to procure payment of the bank's note."

The Court of Appeals held there that the act of the principal debtor, in contracting his corn to the purchaser thereof, with the understanding that the proceeds of sale be applied to the payment of the note, was a sufficient consideration for the bank's agreement to extend, and this conclusion was affirmed by the Supreme Court, 64 Kan. 285, 67 Pac. 860, that court saying:

"By the contract Brooks [the principal debtor] undertook to do something; by the acceptance of this contract Leverton [the purchaser of the corn] announced his purpose to hold him to the doing of that something; hence Brooks had some obligation placed upon him by reason of the execution of his contract and was bound to respond to Leverton in some way. Admitting for the sake of the argument that the contract could not be specifically enforced, for the reason that the price could not be determined, yet there can be little question but that Leverton could have recovered a judgment against Brooks upon the contract, for his failure to make such price certain by his election; hence Brooks was placed in a worse position by reason of this contract than he would have been had it not been made, and we think this is sufficient consideration moving from Brooks to sustain the agreement made by Hovey [the cashier] for the bank to him to extend the time of the payment of the note. Hovey expected and hoped that by the sale of the corn to Leverton the bank would be enabled certainly to obtain payment of this note out of the proceeds of the sale of such corn. Instigated by the hope of this betterment, it gave the extension. Brooks, to obtain the extension, placed himself under some obligation to Leverton. We think that this burden undertaken by Brooks was sufficient to sustain the agreement for the extension of the note and thus excuse Barber [the endorser.]"

Indeed, in the instant case, as bearing out the similarity of situation, Mr. Obertheir, who was both president and cashier of the bank, testified:

"I secured the loan from my father for Mr. Dickson. I did that because Mr. Dickson wanted some money himself, and I wanted to make some collections on what he owed—the collections on the $4,500 he owed us."

And so, in the instant case, if the bank, holding as security for $4,400 a mortgage on some live stock, and what developed to be about 30 bales of cotton of insufficient value to satisfy the indebtedness, and hoping to procure a substantial payment on this indebtedness reducing it to $3,000, and still retain all of its original security, offered to extend the maturity of the remainder of the debt if the plaintiff would contract with a stranger to procure the money, and for such purpose to suffer the detriment necessarily arising from mortgaging his own and his wife's land, it must be held that a sufficient consideration

existed to make the extension agreement binding on the bank.

This situation is not to be confounded with those very different cases where, in order to satisfy the pressing demands of a creditor for the payment of a debt due, the debtor goes out of his own volition and mortgages or sells his property to procure the funds, in reliance upon the creditor's agreement to extend a part of the indebtedness, if a part due is paid, where the creditor himself is not instrumental in the procurement of the loan or the making of the sale, although he may know the debtor is making a sacrifice by the sale or incumbrance of his property, or otherwise acting to his detriment in such effort to satisfy the creditor.

What manifestly distinguishes the instant case from that situation is that, according to the plaintiff's version, the agreement of the bank to extend was not only that a part of the debt be then paid, but that for such purpose he should mortgage his land either to the bank or to some one designated by it, and it was a part of the general transaction that the bank, although not necessarily lending the money itself, would arrange for or procure the loan, if the land were put up as security, and $1,432 of the proceeds paid the bank to be applied on the then due indebtedness of the plaintiff. The particular benefit to be derived by the bank, to wit, the retention by it of all the security for an original indebtedness of $4,400, to secure only $3,000, was achievable by, and inseparably incident to, the plaintiff mortgaging his land, and the execution of the mortgage was the means in the contemplation of both parties by which this result would be reached.

[5] We are, for the reasons stated, therefore unable to agree with the Court of Civil Appeals that the plaintiff's petition does not plead a sufficient consideration in the respect discussed, and the jury, having found the facts to be as so pleaded, and the Court of Civil Appeals also finding there was evidence to sustain the allegations as made, the Supreme Court would be in position to render the judgment here which should, on the findings of the jury, have been rendered in the trial court, were it not for the fact that there was not in the trial court, and necessarily not in the Court of Civil Appeals, any finding as to the value of the cotton to form a basis of judgment.

If the trial court had rendered judgment on the jury findings instead of feeling bound, as it did, to disregard the findings, the judgment entered there on the question of value would have been sustained on the theory that the court itself, in making up its judgment, made the necessary finding of fact to support the judgment. But this is a court of law and not of fact, and the question of value of the cotton being one of fact, we are not author-

ized here to determine it as an original deduction.

We therefore recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and the cause remanded.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.