## AMERICAN REFINING CO. v. STALEY et al.   (No. 2509.)

(Court of Civil Appeals of Texas. Amarillo. June 3, 1925. Rehearing Denied July 1, 1925.)

Evidence ☞450(8)—Sales ☞76—Contract to purchase oil at "posted market price" held unambiguous, and evidence of market price generally properly excluded.

A contract for purchase of oil production, based on "posted market price" of a certain company, *held* clear and unambiguous, thereby making such posted market price the standard, and fact that designated company did not purchase all oil produced did not cause standard to fail, and evidence as to market price generally was properly excluded.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by J. I. Staley and another, composing the firm of Staley & Wynne, and another, against the American Refining Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Bullington, Boone & Humphrey, and John B. King, all of Wichita Falls, for appellant.

Kilgore, Montgomery & Carrigan, of Wichita Falls, for appellees.

HALL, C. J. On March 26, 1923, the appellant company entered into a written contract with J. I. Staley and Chester Wynne, composing the firm of Staley & Wynne, Jerome S. Stone and several other owners of a certain oil lease in Wichita county, for the purchase of all the oil to be produced by the wells on said lease, and to pay each of the owners in proportion to their several interests therein. By its terms the contract was to continue for 6 months, and thereafter until terminated by the appellant company upon 10 days' previous notice to the owners.

This suit was instituted by Staley & Wynne, joined by Jerome S. Stone, to recover amounts alleged to be due them, aggregating $5,500. No question is made by either party as to the sufficiency of the pleadings. The rights of the parties upon this appeal turn upon the construction of the following stipulation of the contract relating to the amount due them for the oil received:

"The oil received under this division order shall be paid by the purchaser (American Refining Company) to the party or parties entitled thereto according to the division of interests above shown at twenty-five (.25) cents per barrel premium over and above the posted market price of the Texas Pipeline Company for the same kind and quality of oil in the particular field in which it is received on the day in which it is received by the purchaser into its custody."

It is admitted that the words "the Texas Pipeline Company" appearing in the above-quoted stipulation should be "the Texas Company." No question is made as to the amount of oil received, and it is conceded that the appellant took all of the oil produced from the lease during the time for which compensation is claimed. The suit was filed because appellant refused to pay for the oil received at 25 cents per barrel over and above the prices shown by the Texas Company's posted prices for the same grade of oil after August 26, 1923.

The appellees contend that a proper construction of the above-quoted stipulation of the contract requires the appellant to pay them at the rate of 25 cents per barrel premium over and above the posted price of the Texas Company for the same quality of oil in the particular field in which it was received on the day it was received by the purchaser; that the contract on its face is plain and unambiguous, and the evidence showing what the Texas Company's posted price for that quality of oil during the period of time in controversy was, and the proof further showing that during said period the Texas Company in good faith purchased from others oil of that quality which it paid for in accordance with its posted price; that the "posted market price of the Texas Company" was established. On the other hand, the appellant alleged and offered testimony to prove that from August 16, 1923, until September 26, 1923, the Texas Company refused to buy oil tendered to it in that field, and would only run 70 per cent. of the oil from wells with which its pipe line was connected, and during this period refused to connect with new wells in the field; that of 70 per cent. of the oil which it would run the Texas Company would purchase, and pay for only 35 per cent. and would store the other 35 per cent. for the owner, and required the owner during said time to store the remaining 30 per cent. of the amount produced at the expense of said owner; that it was intended by the above-quoted stipulation that the term "posted market price" meant the posted price of the Texas Company when such posted price was in truth and in fact the price actually paid by the Texas Company for oil in the open market, and that under the contract the reasonable market price prevailing in that field should be the measure of payment. The appellant further contends that during the period from August 16 to September 26, 1923, the market value of oil in question did not exceed $1.25 per barrel, and that appellant had fully paid appellees for all the oil which it had received at that price.

A jury was impaneled to try the case. The appellees introduced the contract in evidence, and by the witness G. W. Cooper proved the price for the particular quality

of oil in question as posted by the Texas Company for each day from March 23 to September 26, 1923. The court then excluded testimony offered by the appellant to prove: (1) That from August 16 to September 26, 1923, the Texas Company was refusing to purchase in the open market and in the free and unobstructed course of trade oil tendered to it from the pool in question; (2) that appellant had paid appellees the sum which the Texas Company would have paid for like quality of oil, plus 25 cents per barrel premium. The court further excluded proof tendered by appellant to show the market value of crude oil of that quality from August 16 to September 26, 1923, and further excluded all evidence tending to show the intention of appellant in inserting the word "market" in the phrase "posted market price," and its reason for inserting the same in the above-quoted paragraph of the contract. The court concluded as a matter of law that the contract was plain and unambiguous, and was not subject to explanation as to what the parties meant and intended by the term "posted market price of the Texas Company," and instructed the jury to return a verdict for appellees Staley & Wynne in the sum of $3,634.33, with interest, and in favor of Stone in the sum of $1,211.41, and interest. From the judgment entered in accordance with this verdict, this appeal is prosecuted.

In disposing of the matters urged here, it will not be necessary for us to consider separately the various propositions and counterpropositions urged by the parties.

We think the appellees' contention must be sustained. The words "posted" and "market price," when considered separately, have a well-defined legal meaning, and, when used together, as has been done in this contract, they present no patent ambiguity. When considered in the light of the testimony, there is no latent ambiguity. The witness Cooper testified without contradiction that from August 16 to September 26, 1923, he was employed by the Texas Company in its oil-purchasing department, and was still so employed; that he was familiar with the company's purchases of crude oil in that field, and that from April 16, 1923, to September 26, 1923, the Texas Company purchased oil every day from that field, and paid for it at their posted price per barrel on the day such oil was run. He then testified in detail as to the price paid by the Texas Company each day during that period, and stated that the price paid was the price posted by the company. He further testified that there was no difference that he knew of between the Texas Company's posted price for a certain grade of oil and its posted market price for the same oil on the same day; that it at all times had one and only one price on any given date for any given grade of oil, and that the Texas Company purchased oil in accordance with that one price. It thus appears from his testimony that the price posted by the Texas Company for each day was the actual market price which it paid for the oil purchased on that day. The testimony which appellant tendered and which was excluded by the court was wholly immaterial. If admitted, it could not have affected the rights of the parties to this contract which bound appellant to take all of the oil produced from appellees' leases. The evidence would have shown that the Texas Company was not purchasing all of the oil tendered it by all of the operators in that field during the period from August 16th to September 26th; that it would only purchase and pay for 35 per cent. of the oil produced by those with whom it had contracts of purchase; that it would receive another 35 per cent. of oil from its producers which it would store at their risk, and that during said period it required its producers to provide storage for the remaining 30 per cent. of their production themselves; but, as stated above, it paid its posted price for the 35 per cent. which it purchased. The amount so purchased and paid for was fixed by the buyer and seller in the open market in the usual and ordinary course of lawful trade and competition at that time. The fact that the Texas Company would buy only 35 per cent. of the runs from its producers, and on October 9, 1923, lowered the price of oil to $1.25 per barrel for one grade and $1.10 per barrel for another grade, and after so lowering the market price resumed buying all oil tendered to it at its posted price, is wholly immaterial to the questions here considered. The fact is that it did buy 35 per cent. in the free and unobstructed course of trade, and could have bought the other 65 per cent. in the same manner if it desired to do so. Its failure to take all the oil tendered to it is no ground for contending that the standard of price fixed by the contract had failed, when the evidence shows that it took some oil and paid for it at its posted market price. The parties have agreed, as they clearly had the right to do, that the market price as posted daily by the Texas Company should be the standard which would fix the value of the oil received by appellant on that particular day. So long as said company posted a price, and actually paid that price for oil, it cannot be successfully contended that the standard has failed. Ames v. Quimby, 96 U. S. 324, 24 L. Ed. 635; Luetkemeyer Co. v. Murdock (C. C. A.) 267 F. 158; Hoff v. Lodi Canning Co., 51 Cal. App. 299, 196 P. 779; Union Naval Stores Co. v. Patterson, 179 Ala. 525, 60 So. 807; Matthews Glass Co. v. Burk, 162 Ind. 608, 70 N. E. 371.

The contracting parties are presumed to be practical oil men and familar with the varying conditions which suddenly and frequently affect the market price of oil, and in selecting the Texas Company and its posted prices

as their standard they are presumed to know that said company could limit the amount of oil which it would receive at any time under its contracts with its purchasers. If they preferred to adopt this particular standard rather than abide by the general market price which might prevail in that field, the courts must enforce the contract as made, and evidence as to the market price generally is inadmissible under the record. The contract here differs in this particular from the one considered in Taylor Oil & Gas Co. v. Pierce-Fordyce Oil Association (Tex. Civ. App.) 226 S. W. 467. There was no issue to be submitted to the jury, and the trial court did not err in directing a verdict.

The judgment is affirmed.