WOODALL, Justice.
 

 The Lemoine Company of Alabama, L.L.C. (“Lemoine”), subcontracted with HLH Constructors, Inc. (“HLH”), for HLH to perform plumbing work on a construction project. HLH subsequently sued Lemoine, alleging, among other things, that Lemoine had not paid HLH the balance due under the subcontract. The trial court entered a judgment in HLH’s favor, awarding damages, interest, and attorney fees. We reverse and remand.
 

 Facts and Procedural History
 

 Vista Bella, Inc., and Lemoine entered into a contract, by which Lemoine agreed to act as general contractor on a condominium-construction project in Baldwin County (“the project”). Lemoine subcontracted the plumbing work for the project to HLHÍ
 

 During the course of construction, and pursuant to the terms of the general contract, Vista Bella withheld a 5% retainage
 
 [1]
 
 on the work performed. Each month, Lemoine sent Vista Bella an application for payment, in which Lemoine set forth details regarding, among other things, the value of the work completed during the month and the amount of the retainage withheld with respect to that work.
 

 Also during the course of construction, and pursuant to the terms of its subcontract with HLH,
 
 [2]
 
 Lemoine withheld a 5%
 
 *1023
 
 retainage with respect to HLH’s work on the project. HLH sent monthly applications for payment to Lemoine. These applications, like the applications sent by Lemoine to Vista Bella, indicated the value of the work HLH had performed during the month and the retainage withheld with respect to that work.
 

 On July 3, 2007, a certificate of completion was issued for the project. On July 12, 2007, Lemoine billed Vista Bella for the retainage that had been withheld during construction. Vista Bella never paid the retainage. It appears that Vista Bella has paid Lemoine all amounts owed under the general contract, except for the retainage. Lemoine sued Vista Bella to recover the unpaid balance. Vista Bella failed to appear, and the trial court entered a default judgment in Lemoine’s favor, awarding Lemoine $1,438,066.35 in damages, plus interest and costs. Lemoine states that, as of the date of trial in this case, Lemoine had not collected from Vista Bella any portion of the default judgment.
 

 After the completion of the project, HLH sent Lemoine an application for payment of the balance outstanding under the subcontract.
 
 [3]
 
 Lemoine did not pay that bill; instead, it tendered to HLH a check for $1,500. Lemoine argues that the check was intended as a payment on the monthly application, not as a final payment for the retainage under the subcontract. HLH refused the check and requested payment of the entire outstanding balance. Lem-oine has not made any further payment under the subcontract. Lemoine states that “[t]he parties do not dispute that Lemoine made all payments required by the subcontract to HLH except for the final retainage payment and payment for disputed extra work.” Lemoine’s brief, at 43. HLH makes no argument to the contrary.
 

 In April 2008, HLH sued Lemoine and Vista Bella, alleging breach of contract and stating claims for “work and labor done and materials provided, open account, stated account, and under [§] 8-29-1, [Ala. Code 1975].” HLH’s brief, at 9. HLH also sought to enforce a materialman’s lien against Vista Bella.
 

 Lemoine denied HLH’s allegations and moved the trial court to “transfer HLH’s materialman’s lien against Vista Bella to a bond in the amount of $117,827.62 pursuant to [Ala.Code 1975,] § 35-11 — 233(b). ... The trial court granted the motion.” Lemoine’s brief, at 2-3.
 

 
 *1024
 
 In December 2009, the case was tried without a jury. On HLH’s motion, the trial court entered a default judgment against Vista Bella. On February 5, 2010, the trial court entered a judgment against Lemoine, stating:
 

 “This case came for trial on 12/16/09; and the court, having heard the testimony of the witnesses; having reviewed the evidence and having considered the briefs of the parties, hereby enters judgment for [HLH] and against [Lemoine and Vista Bella] for the sum of $138,283.36, including principal of $90,102.95, interest of $25,228.82, and attorneys fees of $22,951.59. [Lemoine and Vista Bella] are taxed with the costs of court.”
 
 [4]
 

 Lemoine now appeals that judgment.
 

 Issues
 

 On appeal, Lemoine raises three issues: (1) whether Vista Bella’s payment to Lem-oine of the balance owed under the general contract was a condition precedent to Lemoine’s obligation to pay HLH the balance owed under the subcontract; (2) whether the trial court erred in determining that the unpaid balance due from Lem-oine to HLH under the subcontract was $90,102.95; and (3) whether the trial court erred in awarding HLH attorney fees and 12% interest pursuant to § 8-29-1 et seq., Ala. Code 1975.
 

 Standard of Review
 

 “When evidence is taken ore ten-us and the trial judge makes no express findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment.
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,
 
 608 So.2d 375, 378 (Ala.1992) (citing
 
 Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & As-
 
 
 *1025
 
 socs.
 
 Inc.,
 
 578 So.2d 1061 (Ala.1991)). We will not disturb the findings of the trial court unless those findings are ‘clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’
 
 Gaston v. Ames,
 
 514 So.2d 877, 878 (Ala.1987) (citing
 
 Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc.,
 
 392 So.2d 1177 (Ala.1981)). ...
 

 “ ‘However, the ore tenus standard of review has no application to a trial court’s conclusions of law or its application of law to the facts; a trial court’s ruling on a question of law carries no presumption of correctness on appeal.’
 
 Ex parte J.E.,
 
 1 So.3d [1002,] 1008 [ (Ala.2008) ].... This Court “‘review[s] the trial court’s conclusions of law and its application of law to the facts under the de novo standard of review.” ’
 
 Id.
 
 (quoting
 
 Washington v. State,
 
 922 So.2d 145, 158 (Ala.Crim.App.2005)).”
 

 Espinoza v. Rudolph,
 
 46 So.3d 403, 412 (Ala.2010).
 

 Analysis
 

 Lemoine first argues that, “[p]ursuant to paragraph 5 of the subcontract, Vista Bella’s payment to Lemoine of the unpaid balance due under the general contract was a condition precedent[
 
 5
 
 ]to Lemoine’s obligation to pay HLH the unpaid balance under the subcontract.” Lemoine’s brief, at 25. “ ‘[I]t is well-established that condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them.’ ”
 
 Federal Ins. Co. v. I. Kruger, Inc.,
 
 829 So.2d 732, 740 (Ala.2002) (quoting
 
 Koch v. Construction Tech., Inc.,
 
 924 S.W.2d 68, 71 (Tenn.1996)). “ ‘In resolving doubts as to whether an event is made a condition of an obligor’s duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee’s risk of forfeiture, unless the event is within the obligee’s control or
 
 the circumstances indicate that he has assumed the risk.’” Kruger,
 
 829 So.2d at 739 (quoting
 
 Restatement (Second) Contracts
 
 § 227 (1981)) (emphasis added).
 

 Although conditions precedent are not favored in contract law,
 

 ‘“[t]his Court has consistently held that the freedom to contract is an inviolate liberty interest.
 

 [[Image here]]
 

 “ ‘... The ban on impairing the obligations of contracts provided in Ala. Const. 1901, § 22, is obviously one that shall forever remain inviolate. Alabama caselaw has maintained the constitutional prohibition on impairing contracts by consistently upholding the intent of the contracting parties.’
 

 [[Image here]]
 

 “... [I]f two parties knowingly, clearly, and unequivocally enter into an agreement whereby they agree that the respective liability of the parties will be determined by some type of agreed-upon formula, then Alabama law will permit the enforcement of that agreement as written.”
 

 Holcim (US), Inc. v. Ohio Cas. Ins. Co.,
 
 38 So.3d 722, 728-29 (Ala.2009) (quoting
 
 Shoney’s LLC v. MAC East, LLC,
 
 27 So.3d 1216, 1221-22 (Ala.2009)).
 

 Lemoine argues that the language of paragraph 5 of the subcontract clearly indicates that HLH assumed the risk of nonpayment by Vista Bella and that,
 
 *1026
 
 therefore, the condition precedent in that paragraph is enforceable. We agree.
 

 Paragraph 5 provides, in pertinent part:
 

 “Notwithstanding anything else in this Subcontract or the Contract Documents,
 
 the obligation of [Lemoine] to make any payment under this Subcontract ... is subject to the express and absolute condition precedent of payment by [Vista Bella],
 
 It is expressly agreed that [Lemoine] and its surety shall have no obligation to pay for any work done on this Project,
 
 until [Lemoine] has received payment for such work from [Vista Bella], ... [HLH] expressly assumes the risk of nonpayment by [Vista Bella].”
 

 (Emphasis added.)
 

 “ ‘ “When a court construes a contract, ‘the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state.’ ” ’ ”
 
 State v. Lorillard Tobacco Co.,
 
 1 So.3d 1, 7 (Ala.2008) (quoting
 
 H & S Homes, L.L.C. v. Shaner,
 
 940 So.2d 981, 988 (Ala.2006), quoting in turn
 
 Polaris Sales, Inc. v. Heritage Imports, Inc.,
 
 879 So.2d 1129, 1133 (Ala.2003), quoting in turn
 
 Strickland v. Rahaim,
 
 549 So.2d 58, 60 (Ala.1989)). HLH does not contest the validity of the subcontract, nor does it argue that the language of paragraph 5 is, standing alone, ambiguous. Moreover, Harrell Lloyd Harrellson, the owner of HLH, testified at trial that, although he “ma[de] certain changes or alterations” to the terms of the proposed subcontract with Lemoine before it was executed, he made no changes to the language of paragraph 5, and he raised no concerns at that time regarding the assignment of the risk of nonpayment from Lem-oine to HLH. Thus, “ ‘the circumstances [surrounding the execution of the subcontract] indicate that [HLH] has assumed the risk.’ ”
 
 Kruger,
 
 829 So.2d at 739 (quoting
 
 Restatement (Second) Contracts
 
 § 227).
 

 The facts of this case indicate that Lem-oine and HLH “knowingly, clearly, and unequivocally enter[ed] into [the subcontract] whereby they agree[d] that the respective liability of the parties [would] be determined by some type of agreed-upon formula,”
 
 Holcim,
 
 38 So.3d at 729, namely, the condition precedent of paragraph 5; therefore, “Alabama law will permit the enforcement of [the subcontract] as written,”
 
 id.,
 
 and Vista Bella’s payment to Lemoine under the general contract is an enforceable condition precedent to HLH’s right to payment under the subcontract.
 

 HLH argues that “[t]he subcontract here does not clearly indicate that HLH intended to shift the risk of loss from Lemoine to itself.” HLH’s brief, at 21. More specifically, HLH argues that the condition precedent in paragraph 5 conflicts with the “pay-when-paid” clause of paragraph 4 of the subcontract and that “the conflict should be resolved in favor of the prior clause.” HLH’s brief, at 22. Paragraph 4 provides, in pertinent part, that “a final payment, consisting of the unpaid balance of the Price, shall be made within 45 days after the last of the following to occur: (a) ...; (b) ...; (c) Final payment by [Vista Bella] to [Lemoine] under the Contract on account of the Work.”
 

 This Court has stated:
 

 “A reasonable interpretation of [a pay-when-paid clause, like the one in paragraph 4,] is that it creates on the part of [the general contractor] an absolute obligation to pay; the language that follows — ‘within thirty (30) days after the last of the following to occur: (a) ..., (b) ..., (c) ..., (d) ... ’ — is reasonably read as merely specifying a time for payment, rather than as creating a condition precedent to payment.”
 

 
 *1027
 

 Kruger,
 
 829 So.2d at 738. HLH appears to argue that paragraph 4 of the subcontract creates an absolute right to payment and is, therefore, in conflict with paragraph 5, which makes the right to payment dependent upon a condition precedent.
 

 However, this Court’s analysis in
 
 Kruger
 
 of the effect of a pay-when-paid clause does not apply in this case. In
 
 Kruger,
 
 the general contractor and its surety relied solely on the pay-when-paid clause in arguing that payment by the owner was a condition precedent to payment to Kruger under a subcontract. This Court rejected that argument, stating:
 

 “Can it be reasonably supposed, without express evidence in support thereof, that Harbert [the general contractor] and Kruger entered into an agreement pursuant to which Kruger was expected to perform a significant amount of work and to provide a substantial amount of materials under the terms of the subcontract, without an absolute agreement from Harbert to pay Kruger for its services and materials? We think not, and
 
 nothing in the record indicates that Kruger agreed to assume the risk of nonpayment [by the owner] for events completely outside its control or influence.”
 

 Kruger,
 
 829 So.2d at 739 (emphasis added).
 

 Here, however, the subcontract includes both a pay-when-paid clause, setting forth the timing of payment, and a pay-if-paid clause, setting forth the conditions under which HLH’s right to payment arises. Unlike the pay-when-paid clause in
 
 Kruger,
 
 the pay-if-paid clause in this case expressly indicates that HLH’s right to payment under the subcontract depends on Vista Bella’s payment under the general contract. Indeed, here, HLH has “expressly assume[d] the risk of nonpayment by [Vista Bella].” Therefore,
 
 Kruger
 
 is distinguishable, and its analysis is inappo-site in this case.
 

 Moreover, this Court has held
 

 “that to ascertain the intent of the parties [to a contract] ‘we must first look to the contract itself, because while “[t]he intention of the parties controls in construing a written contract,” “the intention of the parties is to be derived from the contract itself where the language is plain and unambiguous.” ’ ”
 

 Locke v. Ozark City Bd. of Educ.,
 
 910 So.2d 1247, 1251 (Ala.2005) (quoting
 
 H.R.H. Metals, Inc. v. Miller,
 
 833 So.2d 18, 24 (Ala.2002), quoting in turn
 
 Loerch v. National Bank of Commerce of Birmingham,
 
 624 So.2d 552, 553 (Ala.1993)).
 

 Here, the plain and unambiguous language of paragraph 5 provides that, “Notwithstanding anything else in this Subcontract or the Contract Documents, the obligation of [Lemoine] to make any payment under this Subcontract ... is subject to the express and absolute condition precedent of payment by [Vista Bella].” Nothing in the subcontract contradicts the provisions of paragraph 5 or indicates that the parties intended to assign the risk of nonpayment in a manner different from that set forth in paragraph 5. Therefore, pursuant to the express terms of the subcontract, the timing mechanism of paragraph 4 is subject to the condition precedent of paragraph 5, and the two paragraphs are not in conflict.
 

 Having determined that the condition precedent in paragraph 5 is enforceable, we now consider whether that condition has been satisfied. As noted previously, HLH does not dispute that Lemoine has paid all it owes HLH under the subcontract, “except the final retain-age payment and payment for the disputed extra work.” Lemoine’s brief, at
 
 *1028
 
 43. Lemoine argues that “[it] is not obligated to make final payment to HLH because Lemoine has not received final payment from Vista Bella.”
 
 Id.,
 
 at 43-44. HLH argues, however, that it is “entitled to its full payment because the uncontradicted evidence was that Lem-oine had been paid $90,000 to $100,000 for HLH’s work above the cost of HLH’s subcontract.” HLH’s brief, at 27.
 

 However, any amount that Lemoine had been paid “for HLH’s work above the cost of HLH’s subcontract” is irrelevant to the question whether the condition precedent in paragraph 5 has been satisfied with regard to the retainage. The record indicates that, throughout the construction of the project, Vista Bella withheld a 5% retainage on the work performed under the general contract. That retainage included amounts Vista Bella owed Lemoine for plumbing work performed on the project, including the work done by HLH under the subcontract. The record also indicates that, during the course of construction, Lemoine withheld a 5% retain-age with respect to the work performed by HLH under the subcontract. Thus, the retainage withheld under the terms of the subcontract appears to be part of the re-tainage withheld under the terms of the general contract.
 

 It is undisputed that Vista Bella never paid Lemoine the retainage due under the general contract. Paragraph 5 of the subcontract provides that Lemoine “ha[s] no obligation to pay for any work done on this Project, until [it] has received payment
 
 for such work
 
 from [Vista Bella].” (Emphasis added.) Because Lemoine has not been paid the retainage under the general contract, the condition precedent in paragraph 5 has not been satisfied, and HLH is not entitled to final payment under the subcontract. Therefore, Lemoine has not breached the subcontract, and the trial court erred in awarding HLH damages on HLH’s breach-of-contract claim.
 

 Finally, HLH suggests, citing no authority, that it can recover based on a theory of quantum meruit, because “Lem-oine ... got the benefit of HLH’s work and labor done and materials provided.” HLH’s brief, at 23. However, the acceptance of this argument would, as Lemoine argues, “render paragraph 5 of the subcontract meaningless.” Lemoine’s reply brief, at 5. Further, the argument is contrary to the well established principle that, “ ‘[w]hen an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails.’ ”
 
 Mantiply v. Mantiply,
 
 951 So.2d 638, 656 (Ala.2006) (quoting
 
 Brannan & Guy, P.C. v. City of Montgomery,
 
 828 So.2d 914, 921 (Ala.2002)).
 
 [6]
 

 For these reasons, the trial court’s judgment is reversed and the case is remanded for the entry of a judgment in favor of
 
 *1029
 
 Lemoine.
 
 [7]
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . A retainage is "[a] percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired.”
 
 Black's Law Dictionary
 
 1341 ' (8th ed.2004).
 

 [2]
 

 . Paragraph 3 of the subcontract provides, in pertinent part:
 

 
 *1023
 
 "Subject to the conditions stated in this Subcontract, within 7 days after receiving a progress payment from [Vista Bella] under the contract, [Lemoine] shall make a progress payment to [HLH] equal to the value of the Completed Work, and Stored Material as of the corresponding Monthly Billing Date, to the extent approved by [Lemoine] and allowed and paid by [Vista Bella] on account of the Work, and after deducting (a) all previous payments, (b) current re-tainage (meaning a reserve equal to the Retained Percentage times the allowed value of completed Work and Stored Work, plus any extraordinary reserve provided for here) and (c) all charges or backcharges for services, materials, equipment and other items furnished or otherwise chargeable by [Lemoine] to [HLH].”
 

 [3]
 

 . HLH argues that Lemoine owes it $90,102.95 and that this amount includes, among other things, charges for work HLH did in excavating and repairing a leaking gas line and charges for changes made to the water closets in unit 701 of the project. Lem-oine argues that the unpaid balance under the subcontract is $65,902, which, according to Lemoine, represents the retainage under the subcontract, less $1,500 that Lemoine attempted to pay HLH, and less $20,000 that Lemoine says was designated in the subcontract for the installation of swimming-pool-deck drains. The drains were ultimately deemed unnecessary, and Lemoine argues that a change order deducting $20,000 from the original subcontract was issued.
 

 [4]
 

 . Although the trial court did not make any findings of fact or specify the basis for its judgment, HLH argues that the trial court’s award included “interest at 12% under the statute as well as ... attorney’s fees.” HLH’s brief, at 9. The "statute” to which HLH refers is § 8-29-1 et seq., Ala.Code 1975. Section 8-29-3 provides, in pertinent part:
 

 "(b) When a subcontractor has performed pursuant to his or her contract and submits an application or pay request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in his or her own pay request.submitted to an owner, the contractor shall timely pay to the subcontractor in accordance with the payment terms agreed to by the contractor and subcontractor....
 

 [[Image here]]
 

 "(d) If the owner, contractor, or subcontractor does not make payment in compliance with this chapter, the owner, contractor, or subcontractor shall be obligated to pay his or her contractor, subcontractor, or sub-subcontractor interest at the rate of one percent per month (12% per annum) on the unpaid balance due."
 

 Section 8-29-6 provides, in pertinent part:
 

 "If the court finds in the civil action that the owner, contractor, or subcontractor has not made payment in compliance with this chapter, the court shall award the interest specified in this chapter in addition to the amount due. In any such civil action, the party in whose favor a judgment is rendered shall be entitled to recover payment of reasonable attorneys' fees, court costs and reasonable expenses from the other party.”
 

 " '[W]hen a trial court enters a judgment in a case and does not make specific findings of fact, we must assume that the trial court found the facts necessary to support its judgment, unless the findings would be clearly erroneous and against the great weight of the evidence.' ”
 
 Ex parte Gilley,
 
 55 So.3d 242, 245 (Ala.2010) (quoting
 
 Lakeview Townhomes v. Hunter,
 
 567 So.2d 1287, 1289 (Ala.1990)). To award interest and attorney fees pursuant to § 8-29-6, the trial court must have concluded that Lemoine did not make payment "in accordance with the payment terms agreed to by the contractor and subcontractor,” which, in this case, would be the terms of the subcontract. Therefore, we will assume the trial court’s award was based upon HLH’s breach-of-contract claim.
 

 [5]
 

 .
 
 Black’s Law Dictionary
 
 defines “condition precedent” as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.”
 
 Black’s Law Dictionary
 
 312 (8th ed.2004).
 

 [6]
 

 . Although HLH makes no argument regarding its claims on an open account and on an account stated, those claims fare no better than its work-and-labor claim. " ‘A contract which is definite in all its terms ... cannot be considered a mere open account.’ ”
 
 Wal-Mart Stores, Inc. v. Anniston Dev. Co.,
 
 853 So.2d 218, 220 (Ala.2002) (quoting
 
 Union Naval Stores Co. v. Patterson,
 
 179 Ala. 525, 529, 60 So. 807, 808 (1912)). It cannot be seriously argued that the subcontract between Lem-oine and HLH is not "definite in all its terms.” "An account stated is an agreement between parties who have had previous monetary transactions that the statement of account and the balance struck are correct and a promise, express or implied, that the debtor will pay that amount.”
 
 Gilbert v. Armstrong Oil Co.,
 
 561 So.2d 1078, 1081 (Ala.1990). Here, there is no evidence that the parties have agreed that any "statement of account and the balance struck are correct.”
 

 [7]
 

 . In light of our decision to reverse the trial court's judgment, we pretermit consideration of Lemoine’s argument regarding the amount of the unpaid balance under the subcontract, including the amounts, if any, due for extra work performed on the project, and its argument regarding the award of interest and attorney fees pursuant to § 8-29-3, Ala.Code 1975.