**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000582
23-FEB-2023
12:06 PM
Dkt. 71 AMOP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

HC&D, LLC, a Hawaii Limited Liability Company,
Plaintiff-Appellee, v.
DCK PACIFIC CONSTRUCTION, LLC, a Hawaii Limited Liability
Company; and TERRACE PACIFIC INSURANCE, LTD.,
a Hawaii Corporation, Defendants-Appellants

NO. CAAP-17-0000582

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-1185)

FEBRUARY 23, 2023

LEONARD, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.

AMENDED OPINION OF THE COURT BY LEONARD, J.,
WITH MCCULLEN, J., CONCURRING AND DISSENTING

This case involves a dispute between a contractor and a subcontractor over payment for materials and services. The contractor argues that its "pay-if-paid" provision does not conflict with the "payment is due" provision added by the subcontractor. The parties agree that in case of a conflict, the

subcontractor's terms prevail.  We hold that, in light of all of the relevant contract language, the payment terms conflict and the subcontractor's term prevails.  We further hold that the contractor raised a genuine issue of material fact concerning whether certain materials were defective when delivered.  We affirm in part, vacate in part, and remand the case.

Defendants-Appellants DCK Pacific Construction, LLC (**DCK**) and Terrace Pacific Insurance, Ltd. (**TPI** or **Surety**)[1] (together, **Appellants**) appeal from the July 3, 2017 Final Judgment entered by the Circuit Court of the First Circuit (**Circuit Court**).[2]

I.    BACKGROUND

The State of Hawaiʻi (**State**) contracted with DCK, a general contractor, to perform work at the Honolulu airport for the HNL Aircraft Maintenance and Cargo Complex, Project Nos. A011-25-14, AO1125-15, and AO1127-17 (**HNL TMP Project**).  From September 5, 2013, through November 10, 2015, Plaintiff-Appellee HC&D, LLC (**HC&D**) (formerly known as Ameron Hawaii, LLC, a dba of Ameron International Corp. (**Ameron**))[3] supplied concrete materials and other products and services to DCK for the HNL TMP Project. DCK did not pay HC&D for certain materials and services.

---

[1]    DCK, as principal, and TPI, as surety, executed a surety performance bond for the HNL TMP Project, which is defined below.

[2]    The Honorable Rhonda A. Nishimura presided.

[3]    For the sake of clarity, we refer to HC&D, although certain documents refer to Ameron.

A.    Relevant Procedural History

On June 22, 2016, HC&D filed a complaint against DCK and TPI.  In Count I, HC&D alleged that it was entitled to payment from the Surety for the unpaid amount for the materials and/or services provided for the HNL TMP Project.  In Count II, HC&D alleged that it was entitled to payment from the Surety for the unpaid amount for the materials and/or services provided for a different airport project (**Elliot Street Project**), which is not at issue in this appeal.  In Count III, HC&D alleged breach of contract against DCK for its failure to pay HC&D amounts due on the HNL TMP and Elliott Street Projects.[4]

On January 11, 2017, HC&D moved for summary judgment on Count I and Count III, to the extent that Count III related to the HNL TMP Project (**Motion for Summary Judgment**).  HC&D asserted that on November 14, 2013, it entered into a subcontract with DCK, Purchase Order No. 42006-107 (**Purchase Order** or **Subcontract**), which was later amended by two change orders.  HC&D also asserted that it performed all of its obligations pursuant to the Subcontract and thus, there were no conditions precedent to HC&D's entitlement to payment for the subject materials and labor.  HC&D contended, *inter alia*, that payment was required even if the State had not paid DCK, because the parties had agreed that HC&D's terms and conditions would prevail in case of a conflict, and HC&D's terms and conditions required payment within a specified period of time.

_____

[4]    A fourth count was dismissed with prejudice by stipulation and order.

DCK and TPI opposed the Motion for Summary Judgment, contending that there were material defects in the concrete provided by HC&D; the amounts claimed by HC&D were incorrect; and the State had not paid DCK for the amounts claimed (due to alleged deficiencies), and under the terms of the Subcontract, payment by the State to DCK was a condition precedent to any payment being owed by DCK to HC&D.  In reply, HC&D argued, *inter alia*, that DCK failed to raise a genuine issue of material fact as to an August 7, 2015 delivery.

    B.   Key Contract Provisions

The Subcontract is comprised of a three-page document, signed by each of the parties, with each page initialed at the bottom by the signors, and with attachments including an Appendix "A" and HC&D's General Terms and Conditions of Concrete Sales.  Page 2, Section 4 of the  Conditions (**DCK Conditions**) provides, in relevant part:

> 4.  INVOICES PAYMENT TERMS:  . . . Payments will be made within Forty Five (45) days after the date of receipt of [HC&D]'s invoice.  Receipt of payment from the [State] to the [DCK] for [HC&D's] work is an absolute condition precedent to the [HCD's] right to payment.

The following was typed on the bottom of page 3 of the Subcontract:

"**'[HC&D] General Terms and Conditions of Concrete Sales' will prevail in case of any conflict.**

(See attached Terms and Conditions of Sales)

Appendix "A" states:  "Notwithstanding anything to the contrary within this Subcontract agreement (hereinafter "Agreement"), the following conditions shall govern[.]"  One of

the listed conditions states: "8. Insert [HC&D] Terms and Conditions making it part of the purchase order."

Section 6 of HC&D's General Terms and Conditions of Concrete Sales (**HC&D Terms and Conditions**) provides:

> 6. PAYMENT TERMS: Payment for all purchases is due no later than thirty (30) days following the last day of the month in which the purchase was made. All balances not paid as above shall bear interest at the rate of 1-1/2% per month from the due date, or at the highest rate allowed by the usury laws of Hawaii, whichever is less. . . . In no event shall [DCK] make any set off or reduction to amounts owed to [HC&D] hereunder.

C. The Circuit Court's Decision

On February 9, 2017, a hearing was held on the Motion for Summary Judgment. After hearing the arguments of the parties, the Circuit Court announced its ruling, stating, *inter alia*:

> There is no dispute that the parties entered into a contract, and both parties, who are not novices, in fact they are in the business of entering into similar contracts, that they have initialed all the pages and that there was an agreement acknowledged by DCK in terms of incorporating. . . let's see. In particular, page 3 of 3, that [HC&D's] general terms and conditions of concrete sales will prevail in case of any conflict.
>
> [DCK] argues that there is no conflict, that that particular condition that if DCK does not get paid by the State, no one will get paid. [The] argument is that that does not present any conflict with [HC&D's] condition with respect to 30 days. In looking at [HC&D's] term and condition regarding payment terms, paragraph 6, "Payment for all purchases is due no later than 30 days following the last day of the month in which the purchase was made[,]" [DCK] says that particular payment term does not conflict with their condition in that if they don't get paid, we're not going to pay you within 30 days.
>
> The Court finds that there is a conflict between those two conditions, and DCK agreed that if there is any conflict, that [HC&D's] terms and conditions prevail. So the Court will grant the summary judgment in favor of HC&D with respect to Count 1, and this is the bond on AHB 0330 for the [HNL TMP Project], and with respect to Count 3, that part of Count 3 for the breach of contract for the [HNL TMP Project].

The Circuit Court entered a written order on the Motion for Summary Judgment on March 28, 2017, entering summary judgment

against TPI on Count I and against DCK on Count III as it pertained to the HNL TMP Project. The Circuit Court entered summary judgment against Appellants for the HNL TMP Project, jointly and severally, in the amount of $130,301.39. The circuit court also awarded HC&D $452.17 in costs and $7,598.50 in attorneys' fees. Appellants timely appealed.

II. POINTS OF ERROR

DCK raises two points of error on appeal, contending that the Circuit Court erred in: (1) concluding that Section 6 of the HC&D Terms and Conditions conflicted with Section 4 of the DCK Conditions, and thus, the HC&D payment term prevailed over DCK's "pay-if-paid" condition precedent; (2) granting summary judgment as to HC&D's August 7, 2015 concrete shipment, as DCK raised a genuine issue of material fact concerning whether the concrete shipment met contract requirements.

III. APPLICABLE STANDARDS OF REVIEW

We review a circuit court's granting of summary judgment *de novo* using the same standard applied by the circuit court. Nozawa v. Operating Eng'rs Loc. Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018) (citation omitted). "When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." Mikelson v. United Servs. Auto. Ass'n, 107 Hawaiʻi 192, 197, 111 P.3d 601, 606 (2005) (citation and internal quotation marks omitted).

IV.   DISCUSSION

   A.   The Disputed Contract Terms

        Appellants state two propositions in their first point of error.  Appellants first contend that the Circuit Court erred in interpreting the Subcontract by concluding that Section 6 of the HC&D Terms and Conditions conflicted with Section 4 of the DCK Conditions.  Appellants further contend that "thus" the Circuit Court erred in holding that Section 6 of the HC&D Terms and Conditions prevailed over Section 4 of the DCK Conditions.  Appellants expressly acknowledge, elsewhere in the Opening Brief (and in the proceedings below), that the Subcontract provides that the HC&D Terms and Conditions would control in the case of any conflict between the DCK Conditions and the HC&D Terms and Conditions.[5]

        Section 4 of the DCK Conditions states in full:

> 4.  INVOICES PAYMENT TERMS:  [HC&D] shall submit its invoices in form satisfactory to, or as may be required by, [DCK].  Invoices may be submitted to cover deliveries in whole or in part of the goods, materials, articles or services constituting this order.  [HC&D] recognizes that all or some of the goods, materials, articles or services may form a part of work being performed by [DCK] under a contract with the [State] and invoices for deliveries made may be incorporated by [DCK] into its overall billing under such contract.  Payments will be made within Forty Five (45) days after the date of receipt of [HC&D's] invoice.  Receipt of payment from the [State] to [DCK] for [HC&D's] work is an absolute condition precedent to [HC&D's] right to payment.  Payments will be made in full unless [DCK's] contract with its client provides for retention, in which case [DCK] shall retain a like amount from [HC&D] (for "Incorporated" goods, materials, articles or services only).  Retention will be paid to [HC&D] upon the receipt of corresponding retention payments by [DCK] under its contract with the client.  When discounts are offered by [HC&D] for prompt payments, the discount period shall be computed starting with the date of receipt by [DCK] of the goods, materials, articles or services, or the date the invoice therefore was approved by

---

   [5]    As set forth above, surrounded by asterisks, the Subcontract states that the HC&D Terms and Conditions "will prevail in case of any conflict" and references the attached HC&D Terms and Conditions.

[DCK], which ever is the later.  [DCK's] payment for all or any part of the purchase price shall not constitute a waiver of any of [DCK's] rights hereunder.

(Emphasis added).

Section 4 of the DCK Conditions includes what is sometimes referred to as a "pay-if-paid" term, as well as a 45-day timing provision.  A pay-if-paid term is a condition precedent, and "as the name suggests, provides that a subcontractor will be paid only if the contractor is paid and thus ensures that each contracting party bears the risk of loss only for its own work."  BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland, 679 F.3d 643, 649 (7th Cir. 2012) (emphasis omitted).  For example, when a contract states that the "[c]ontractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes the risk."  Id. (citation and internal quotation marks omitted).[6]

DCK argues that, although its 45-day payment timing provision conflicts with HC&D's 30-day payment period, there is no conflict between DCK's pay-if-paid provision and HC&D's

---

[6]     "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."  Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 246, 921 P.2d 146, 166 (1996) (quoting Restatement (Second) of Contracts § 224 (1981)). "Condition precedent" is a term of art, defined as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises."  Black's Law Dictionary (11th ed. 2019).  In other words, "[i]f the condition does not occur and is not excused, the promised performance need not be rendered."  Id.   Some courts have held that "condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them."  Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc., 62 So.3d 1020, 1025 (Ala. 2010) (**Lemoine**) (citation and internal quotation marks omitted).

payment terms.  We reject DCK's argument that Section 6 of the HC&D Terms and Conditions merely speaks to the timing of payment, and therefore, does not conflict with the DCK payment term.

Section 6 of the HC&D Terms and Conditions states in full:

> 6.  PAYMENT TERMS:  <u>Payment for all purchases is due no later than thirty (30) days following the last day of the month in which the purchase was made</u>.  All balances not paid as above shall bear interest at the rate of 1-1/2% per month from the due date, or at the highest rate allowed by the usury laws of Hawaii, whichever is less.  A prompt payment cash discount of 1% of the purchase price will be allowed for purchase price payments made within ten (10) days after the statement date provided that purchaser has no outstanding prior balances.  All sales are subject to [HC&D's] approval of [DCK's] credit.  [HC&D] reserves a security interest in the goods pursuant to the Uniform Commercial Code and in all proceeds thereof until payment in full of the purchase price.  [DCK] shall execute and deliver to [HC&D] such UCC financing statements and other documents as may be requested by [HC&D] for the purpose of perfecting [HC&D's] security interest in the product and proceeds.  <u>In no event shall [DCK] make any set off or reduction to amounts owed to [HC&D] hereunder</u>.

(Emphasis added).

There are a variety of differences between these two payment provisions, but most relevant here is that Section 4 of DCK's Conditions makes payment to DCK from its client a condition precedent to its payment obligation to HC&D, whereas under Section 6 of HC&D's Terms and Conditions, DCK's obligation to pay HC&D arises no later than thirty days after the month of the delivery of the concrete.  Either payment is subject to a condition precedent or payment is due no later than a date certain after delivery.  This is a clear conflict.  Interpreting the Subcontract to impose a condition precedent to payment would effectively render the thirty-day payment obligation meaningless, as payment would never be due unless DCK was paid first.

FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Section 7 of HC&D's Terms and Conditions supports this interpretation by including Buyer's failure to make any payment to Seller when due as a default under the Subcontract.[7]

DCK points to the Alabama Supreme Court's decision in Lemoine, arguing that the case stands for the proposition that a pay-if-paid provision does not conflict with a payment timing provision set forth in the same contract. However, the contract language at issue in Lemoine is quite different than the language here. In Lemoine, the pay-if-paid provision stated:

> Notwithstanding anything else in this Subcontract or the Contract Documents, the obligation of [the contractor] to make any payment under this Subcontract is subject to the express and absolute condition precedent of payment by [the client]. It is expressly agreed that [the contractor] and its surety shall have no obligation to pay for any work done on this Project, until [the contractor] has received payment for such work from [the client]. [The subcontractor] expressly assumes the risk of nonpayment by [the client].

Lemoine, 62 So.3d at 1026 (emphasis added; ellipses omitted).

The Lemoine timing provision simply stated "a final payment . . . shall be made within 45 days after the last of the following. . ." Id.

---

[7] Section 7 of the HC&D Terms and Conditions states:

7. BUYER'S DEFAULT: If [DCK] fails to make any payment to [HC&D] when due, if [DCK's] financial responsibility becomes impaired or unsatisfactory in [HC&D's] sole judgment, or if [DCK] commits a material breach of this contract, or inhibits or frustrates [HC&D's] performance of this Contract by any act or failure to act, [HC&D] may, without breach of contract and without prior notice or demand, suspend or cancel further performance or deliveries due hereunder. [DCK] shall be liable to [HC&D] for any losses or damages of [HC&D] arising from such [DCK] defaults and failures, as well as any resulting delays to [HC&D's] performance. [HC&D] may, at its sole option and in its discretion, resume performance of this contract upon [DCK's] performance of its obligations, [DCK's] payment of all accrued amounts due [HC&D], [DCK's] removal of any inhibiting cause, and upon [DCK's] providing sufficient assurance or security for its performance as [HC&D] in its sole judgment may determine to be required.

The Alabama court noted, *inter alia*, that the subcontractor expressly assumed the risk of nonpayment. Id. at 1027. There is no such assumption of risk language in the Subcontract here. On the contrary, HC&D's Terms and Conditions contain a payment term that is completely different than the payment term in the 3-page Purchase Order; it indicates that payment is due no later than the specified date certain and that in no event shall DCK make any set off or reduction, and sets forth consequences for failure to pay when due, including accrual of interest, suspension or cancellation of HC&D's further performance, and liability for losses or damages.

The Alabama court also relied on the plain and unambiguous language specifying that "[n]otwithstanding anything else in this Subcontract or the Contract Documents" the risk-shifting condition precedent applied to the contractor's payment obligation. Id. No such language appears in the Subcontract; on the contrary, the Subcontract expressly states that HC&D's Terms and Conditions prevail in case of a conflict.

We conclude that the Circuit Court did not err by concluding that Section 6 of the HC&D Terms and Conditions conflicted with Section 4 of the DCK Conditions. Therefore, in light of the entirety of the Subcontract, especially in light of the parties' agreement that the HC&D Terms and Conditions will prevail in case of any conflict, we conclude that the Circuit Court did not err in holding that Section 6 of the HC&D Terms and Conditions prevailed over Section 4 of the DCK Conditions.

B.    The Issue of Concrete Standards

In the second point of error, Appellants contend that the Circuit Court erred in failing to find that DCK raised a genuine issue of material fact concerning whether an August 7, 2015 shipment of concrete failed to meet the contract standards.

In opposition to HC&D's motion for summary judgment, DCK provided the Declaration of Kelvin Osborne (**Osborne**), Vice President of Operations for DCK.  Osborne attested that he had personal knowledge of the facts contained in his declaration. Osborne averred, *inter alia*, that HC&D delivered defective cement mix on August 7, 2015, which resulted in cracking concrete slabs. With its reply memorandum, HC&D submitted the declaration of Eric Shimabukuro (**Shimabukuro**), Vice President Operations-Oahu for HC&D.  Shimabukuro acknowledged that there was shrinkage cracking of the concrete, but disputed that the cracking was due to defective concrete.

HC&D argued before the Circuit Court, and again argues on appeal, that Osborne's declaration is silent as to the basis for his conclusion that the cement (or concrete) delivered by HC&D was defective.  We recognize that Osborne's declaration does not specifically state his qualifications for his opinion that "delivery issues on August 7, 2015 stemming from HC&D's plant caused the concrete to become too dry and when it was placed it did not set properly."  However, in the declaration, Osborne does aver that he is the Vice President of Operations for DCK, at least implying a certain level of expertise, and he claims that he has personal knowledge of the facts stated, at least implying

that he perceived the events on and after the August 7, 2015 concrete delivery.  Osborne declared, *inter alia*, that the State refused to pay for the cracked concrete slabs because of defective cement mix delivered by HC&D on August 7, 2015, which resulted in cracking concrete slabs.

Affidavits supporting and opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Hawaiʻi Rules of Civil Procedure Rule 56(e).  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness'[s] own testimony." Hawaiʻi Rules of Evidence (**HRE**) Rule 602 (2016).  "Personal knowledge" means "that the witness perceived the event about which [they] testif[y] and that [they have] a present recollection of that perception."  HRE Rule 602 cmt.  HRE Rule 701 provides that lay witness testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue."  HRE Rule 701 "retains the common-law requirement that lay opinion be based upon firsthand knowledge[.]"  HRE Rule 701 cmt.

Nevertheless, the Hawaiʻi Supreme Court has held:

> In reviewing a circuit court's grant or denial of a motion for summary judgment, the appellate court 'must view

> all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion' and any doubt should be resolved in favor of the non-moving party. . . . Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper.

Nationstar Mortg. LLC v. Kanahele, 144 Hawaiʻi 394, 401-02, 443 P.3d 86, 93-94 (2019) (citations omitted).  This court has also observed:

> Courts will treat the documents submitted in support of a motion for summary judgment differently from those in opposition.  Although they carefully scrutinize the materials submitted by the moving party to ensure compliance with the requirements of Rule 56(e), HRCP (1990), the courts are more indulgent towards the materials submitted by the non-moving party.  10A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure:  Civil § 2738 (1983) (Wright and Miller). This is because of the drastic nature of summary judgment proceedings, which should not become a substitute for existing methods of determining factual issues.

Miller v. Manuel, 9 Haw. App. 56, 66, 828 P.2d 286, 292 (1991) (citation omitted); see also Pioneer Mill Co. v. Dow, 90 Hawaiʻi 289, 295-96, 978 P.2d 727, 733-34 (1999) (emphasizing that inferences to be drawn from the facts alleged in materials considered by the court in deciding a summary judgment motion must be viewed in the light most favorable to the non-moving party).

Viewing the evidence in the light most favorable to the non-moving party, we conclude that Osborne's declaration was at least minimally sufficient to raise a genuine issue of material fact, and the Circuit Court erred in granting summary judgment on HC&D's claim for $45,374.48 owed for the August 7, 2015 concrete delivery.

V.   CONCLUSION

For these reasons, the Circuit Court's July 3, 2017 Judgment is affirmed in part and vacated in part.  The Judgment is vacated as to the award of $45,374.48 allegedly owed for the August 7, 2015 concrete delivery, and affirmed in all other respects.  This case is remanded to the Circuit Court for further proceedings on HC&D's claims arising out of the August 7, 2015 concrete delivery.

| | |
|---|---|
| On the briefs: | /s/ Katherine G. Leonard |
| | Presiding Judge |
| Paul R. Grable, | |
| (Lyons, Brandt, Cook & | /s/ Karen T. Nakasone |
|  Hiramatsu), | Associate Judge |
| for Defendants-Appellants. | |
| | |
| Patricia Kehau Wall, | |
| (Tom, Petrus & Miller, LLLC), | |
| for Plaintiff-Appellee. | |

CONCURRING AND DISSENTING OPINION BY MCCULLEN, J.

On its face, DCK's Pay-If-Paid Clause unambiguously provides that the seller has no right to payment unless the buyer received payment from the client:

**"Receipt of payment from the Client to the Buyer for Seller's work is an absolute condition precedent to the Seller's right to payment."**

More specifically, this Pay-If-Paid Clause transfers the risk of the client's nonpayment from the buyer to the seller.

In this case, the State of Hawaiʻi contracted with DCK for work at the Honolulu airport. To do some of that work, DCK ordered concrete from HC&D (formerly Ameron), who then delivered the concrete. The State, however, rejected the concrete and refused to pay DCK, who in turn did not pay HC&D. But HC&D wants to get paid.

So what happens now? For that, I turn to the agreement between DCK and HC&D, who the circuit court noted were not novices. Beginning with DCK's Purchase Order, it set forth terms of payment:

> Except as may be modified in this order, the following conditions are a part thereof, and acceptance of this order constitutes Seller's agreement thereof:
>
> . . . .
>
> 4. Invoices Payment Terms: . . . . Payments will be made within Forty Five (45) days after the date of receipt of Seller's invoice [(**45-day Clause**)]. Receipt of payment from the Client to the Buyer for Seller's work is an absolute condition precedent to the Seller's right to payment [(**Pay-If-Paid Clause**)]. . . .
>
> . . . .
>
> **Ameron Hawaii General Terms and Conditions of Concrete Sales' will prevail in case of any conflict.**
> (See attached Terms and Conditions of Sales)

(Emphasis added.)  Critical to the analysis here is the added provision that HC&D's Terms and Conditions will prevail where there is a conflict.

Attached to DCK's Purchase Order was an Appendix A, which inserted HC&D's Terms and Conditions into DCK's Purchase Order, making it a part of the purchase order notwithstanding anything to the contrary:

> Contract Drawings, Specifications, Addendums, and Other
> HNL Aircraft Maintenance and Cargo Complex
> <u>Honolulu International Airport, Oahu, Hawaii</u>
>
> Notwithstanding anything to the contrary within this Subcontract agreement (hereinafter "Agreement"), the following conditions shall govern:
>
> 1.    Attachment #1 is not applicable to Ameron Hawaii.
>
> 2.    Attachment #2 is not applicable to Ameron Hawaii.
>
> 3.    Exhibit 1 Appendix 1 is not applicable to Ameron Hawaii.
>
> 4.    Exhibit 1 Appendix 2 is not applicable to Ameron Hawaii.
>
> 5.    Activity Hazard Analysis is not applicable to Ameron Hawaii.
>
> 6.    Exhibit 1 Appendix 4 is not applicable to Ameron Hawaii.
>
> 7.    Competent Person Designation is not applicable to Ameron Hawaii.
>
> 8.    <u>Insert Ameron Hawaii Terms and Conditions making it part of the purchase order</u>.
>
> 9.    Ameron Hawaii will provide Certificate of Insurance.
>
> 10.   Ameron Hawaii will provide Company Safety Plan.
>
> 11.   Ameron Hawaii is not onsite doing any work function, only delivery of ready mix concrete.

(Emphasis added and formatting altered.)

Like DCK's Purchase Order, HC&D's Terms and Conditions also addressed terms of payment:

> 6.  PAYMENT TERMS:  <u>Payment for all purchases is due no
> later than thirty (30) days following the last day of the
> month in which the purchase was made</u> [(**30-Day Clause**)].  All
> balances paid as above shall bear interest at the [rate] of
> 1-1/2% per month from the due date, or at the highest rate
> allowed by the usury laws of Hawaii, whichever is
> less. . . .  In no event shall Buyer make any set off or
> reduction to amounts owed to Seller hereunder.

(Emphasis added.)[1]

The parties do not contest that HC&D's Terms and Conditions were inserted into DCK's Purchase Order.  The parties do not contest that HC&D's Terms and Conditions prevail should there be any conflict.  And the parties do not contest that the 45-Day Clause conflicts with the 30-Day Clause and, thus, the 30-Day Clause prevails.

---

[1]  The Pay-If-Paid Clause is not a reduction or setoff of amounts owed. <u>See</u> Majority Opinion at 11; <u>Black's Law Dictionary</u>, 1648 (11th ed. 2019) (defining setoff as "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor").

Instead, the Pay-If-Paid Clause establishes a condition that must be present before there is a right to payment.  HC&D must have a right to payment before that payment can be reduced or setoff.

Thus the language, "In no event shall Buyer make any set off or reduction to amounts owed to Seller hereunder[,]" does not conflict with the Pay-If-Paid Clause.  <u>See</u> Majority Opinion at 11.  It may, however, conflict with other sections of DCK's Purchase Order not at issue in this appeal such as portions of Paragraph 14 that address reduction in payment and buyer's right to setoff:

> <u>Seller shall be paid therefore at applicable unit prices or
> on the basis of percentage completed</u> which had been agreed
> upon at time of acceptance.  Buyer shall have the right to
> take possession of any goods, material or articles in
> Seller's possession, whether or not such items have been
> fabricated and/or manufactured for the intended purpose of
> this order at the time of termination, and Buyer shall
> reimburse Seller for the cost thereof plus 5% for overhead
> and profit, <u>subject to Buyer's right to set-off</u> . . . .

(Emphases added.)

Similarly, the Pay-If-Paid Clause is not a default for nonpayment. <u>See</u> Majority Opinion at 10; <u>Black's Law Dictionary</u>, 526 (11th ed. 2019) (defining default as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due").

HC&D must have a right to payment before DCK can be in default for nonpayment.

But, HC&D then argues that its 30-Day Clause also conflicts with the Pay-If-Paid Clause.

"Contract terms are interpreted according to their plain, ordinary, and accepted sense in common speech." Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013) (citation omitted). "Further, in construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety. If there is any doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen." Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawaiʻi 201, 213, 166 P.3d 961, 973 (2007) (citation, brackets, and internal quotation marks omitted).

"A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 246, 921 P.2d 146, 166 (1996) (quoting Restatement (Second) of Contracts § 224 (1981)). "Condition precedent" is a term of art, defined as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." Black's Law Dictionary 366 (11th ed. 2019). In other words, "[i]f the condition does not occur and is not excused, the promised performance need not be rendered." Id. "[I]t is well-established that condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them." Lemoine

Co. of Alabama, L.L.C. v. HLH Constructors, Inc., 62 So.3d 1020, 1025 (Ala. 2010) (citation and internal quotation marks omitted).

A Pay-If-Paid clause is a condition precedent, and "as the name suggests, provides that a subcontractor will be paid *only* if the contractor is paid and thus ensures that each contracting party bears the risk of loss only for its own work." BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland, 679 F.3d 643, 649 (7th Cir. 2012). "While interpreting contract language to work a forfeiture is not favored, there comes a point where language is simply so clear that no other interpretation is warranted." 3 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 8:55 (July 2022 Update).

In Maryland, the Court of Special Appeals reviewed the language, "[i]t is specifically understood and agreed that the payment to the trade contractor is dependent, as a condition precedent, upon the construction manager receiving contract payments including retainer from the owner." Gilbane Bldg. Co. v. Brisk Waterproofing Co., 585 A.2d 248, 250 (Md. Ct. Spec. App. 1991) (emphasis removed and added). The court held that this language "unquestionably establishes a condition precedent." Id. at 251.

In Alabama, the supreme court reviewed the language that "the obligation of Lemoine to make any payment under this Subcontract . . . is subject to the express and absolute condition precedent of payment by Vista Bella." Lemoine, 62 So.3d at 1026 (emphasis removed and added; brackets omitted). The court described this language as "plain and unambiguous" and

held that it was an enforceable condition precedent.  Id. at 1027.

The United States Court of Appeals for the Seventh Circuit reviewed the language that "[i]t is expressly agreed that owner's acceptance of subcontractor's work and payment to the contractor for the subcontractor's work are conditions precedent to the subcontractor's right to payments by the contractor.  "BMD Contractors, 679 F.3d at 647 (formatting altered and emphasis added).  The court held that the "language is plain" and "receipt of payment is a condition precedent to its obligation to pay . . . ."  Id. at 649.  The court explained that "the condition-precedent language is clear and sufficient on its face to unambiguously demonstrate the parties' intent that BMD would not be paid unless Industrial Power itself was paid" and "[a]dditional transfer-of-risk language is not necessary."  Id.

This is all to say that expressly stating payment by the client is a "condition precedent" plainly and unambiguously demonstrates the intent of the parties to transfer the risk of a client's nonpayment from one party to another party.

Here, the language of the Pay-If-Paid Clause plainly and unambiguously demonstrated an intent to transfer the risk of the State's nonpayment as it expressly stated that payment by the client was an "absolute condition precedent" to seller's right of payment.  On the other hand, the 30-Day Clause established the timing of when payment was due, which was "no later than thirty (30) days following the last day of the month in which purchase was made."

Thus, the Pay-If-Paid Clause speaks to *if* payment is due, and the 30-Day Clause speaks to *when* payment is due.

Nothing in the 30-Day Clause extinguishes the transfer of the risk of nonpayment.  Nothing in the 30-Day Clause excuses the absolute condition precedent.  And nothing in 30-Day Clause indicates that the parties intended to assign the risk of the State's nonpayment differently than set forth in the Pay-If-Paid Clause.

In short, the timing in which the payment is due (30-Day Clause) cannot occur until there is a right to receive that payment (Pay-If-Paid Clause) in the first place.  So, in my view, the 30-Day Clause does not conflict with the Pay-If-Paid Clause, but rather follows from it.

Based on the foregoing, I respectfully dissent from the majority's resolution of the first point of error, but concur in the majority's resolution of the second point of error.

/s/ Sonja M.P. McCullen
Associate Judge